2007 WY 124

In the Matter of the Worker's Compensation Claim of Keith HUNTINGTON, Appellant (Petitioner),

v.

STATE of Wyoming, ex rel., WYOMING WORKERS' COMPENSATION DIVISION, Appellee (Respondent).

No. 06–237.

Supreme Court of Wyoming.

Aug. 3, 2007.

al; and Kristi M. Radosevich, Assistant Attorney General.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

VOIGT, Chief Justice.

[¶ 1] The appellant, Keith Huntington, appeals a district court order affirming the Office of Administrative Hearings' (OAH) denial of workers' compensation benefits. He argues that his current medical problems are a direct result of a 1999 workplace injury. We find that the OAH properly determined that the appellant failed to meet his burden of proof and, therefore, affirm.

## ISSUE

[¶ 2] Did the OAH act arbitrarily and capriciously when it denied benefits for the appellant's current medical problems?

## FACTS

In 1985, the appellant suffered a workplace back injury as a result of some heavy lifting while employed in Nevada. The appellant again injured his back the next year and, in August 1987, his physician, Dr. Thomas Bauman, recommended that the appellant no longer engage in "labor work." The appellant underwent two spinal fusion surgeries in 1989 and 1991 as a result of his back injuries. After the second surgery, Dr. Bauman assigned the appellant a 25% whole person impairment rating and determined that he was "permanently disabled for hard rock mining, heavy labor, and the type of work that he was doing before."

[¶ 4] In May 1999, the appellant suffered another back injury while working in Wyoming when he attempted to prevent an oxygen container from tipping over in a stairwell. The Workers' Compensation Division (the Division) awarded the appellant permanent disability benefits for this injury. After this injury, Dr. Bauman noted that (1) the appellant could return to work but should not engage in any "heavy work"; (2) he had "progression of degenerative wearing out of his disks" above his previous spinal fusion; (3) he did not require a further spinal fusion

Representing Appellant: David M. Gosar of Jackson, Wyoming.

Representing Appellee: Patrick J. Crank, Wyoming Attorney General; John W. Renneisen, Deputy Attorney General; Steven R. Czoschke, Senior Assistant Attorney Gener-

surgery; and (4) he could return to the workforce, subject to the "heavy work" restriction.

[¶ 5] Thereafter, in 2001, the appellant secured various jobs as an iron worker, constructing underground bunkers, and in metal fabrication. In May 2003, the appellant suffered two further, non-work-related back injuries, one when his "foot slipped" off a curb and he "felt something pop" in his back, and another when he attempted to move a rock using a shovel on ranchland he owns. After these injuries, the appellant's doctors believed that the appellant would require further fusion of his lower back.

■ The appellant sought workers' compensation benefits for the treatment related to his May 2003 injuries and for future medical costs which, he argued, all arose from the compensable 1999 injury. The Division denied the appellant's application for benefits, reasoning that his current spinal problems were related to his 1985 injury, not "the lumbar sprain on May 26, 1999." The appellant requested a hearing on his claim, which hearing was held before the OAH on December 22, 2004. The OAH denied the appellant benefits and, on appeal to the district court, that denial was affirmed. This appeal followed.

## STANDARD OF REVIEW

■ [¶ 7] The OAH determined that the appellant failed to meet his burden of proving that his current condition was work related or causally related to his 1999 workplace injury. Wyo. Stat. Ann. § 16–3–114(c) (LexisNexis 2007) governs our review of agency actions. *Spletzer v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2005 WY 90, ¶ 9, 116 P.3d 1103, 1108 (Wyo.2005). Under that statute, where there is a finding that a claimant has failed to meet his or her burden of proof, our review focuses on whether the OAH acted arbitrarily or capriciously. *State ex rel. Workers' Safety & Comp. Div. v. Slaymaker*, 2007 WY 65, ¶ 11, 156 P.3d 977, 980–81 (Wyo.2007).

"Under the arbitrary, capricious and abuse of discretion standard, we are charged with examining the entire record. In our examination and review of a hearing examiner's determination, we defer to the hear-

ing examiner's findings of fact. We will examine conflicting and contradictory evidence to see if the hearing examiner reasonably could have made its findings based on all the evidence before it. The findings of fact may include determinations of witness credibility, as the hearing examiner is charged with determining the credibility of the witnesses. In our review, we will not overturn the hearing examiner's determinations regarding witness credibility unless they are clearly contrary to the overwhelming weight of the evidence."

*Id.* (quoting *Brees v. Gulley Enters., Inc.*, 6 P.3d 128, 132 (Wyo.2000)).

## DISCUSSION

■ [¶ 8] At the outset, it is important properly to frame the issue in the instant case. This is not a direct appeal based on the appellant's initial injury. Since the appellant applied for benefits in the instant case in 2003 and the discrete workplace injury occurred on May 26, 1999, such a claim would clearly be time barred if benefits were sought for the primary injury. *See* Wyo. Stat. Ann. § 27–14–503 (LexisNexis 2007) (establishing a one-year statute of limitations period for claims based on injuries that are "the result of a single brief occurrence"). Instead, the appellant seeks benefits for the continued deterioration of his back, which deterioration, he argues, was caused by the 1999 injury, and not by his preexisting fusion, subsequent work activities, or the injuries in 2003.

■ The Division submitted minimal evidence in the contested case hearing, which evidence mainly consisted of paperwork and a copy of the initial denial of benefits. In contrast, the appellant personally testified and submitted numerous reports from various doctors who had either personally examined him regarding the instant case and in the past, or doctors who had conducted a review of his medical records. The OAH found that the appellant did not demonstrate a causal connection between his 1999 workplace injury and his current medical condition in part because the physicians who believed the appellant's current injuries were

caused by his previous injury did not discuss the relevance of the appellant's intervening employment involving physical labor or the contribution that his May 2003 injuries had on his current condition.

[¶ 10] A claimant in a workers' compensation case must prove all elements of his or her claim for benefits by a preponderance of the evidence. *Thornberg v. State ex rel. Wyo. Workers' Comp. Div.*, 913 P.2d 863, 866 (Wyo.1996). We have recognized that causation is "embedded in the definition of 'injury[.]'" *Id.* Wyo. Stat. Ann. § 27–14–102(a)(xi) (LexisNexis 2007) defines "injury" as follows:

> "Injury" means any harmful change in the human organism other than normal aging and includes damage to or loss of any artificial replacement and death, arising out of and in the course of employment while at work in or about the premises occupied, used or controlled by the employer and incurred while at work in places where the employer's business requires an employee's presence and which subjects the employee to extrahazardous duties incident to the business.

A causal connection exists between a claimant's injury and his or her employment when "there is a nexus between the injury and some condition, activity, environment or requirement of the employment." *Sanchez v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2006 WY 64, ¶ 10, 134 P.3d 1255, 1259 (Wyo.2006) (quoting *Sinclair Trucking v. Bailey*, 848 P.2d 1349, 1352 (Wyo.1993), *overruled in part on other grounds by Newman v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2002 WY 91, 49 P.3d 163 (Wyo. 2002)). In the instant case, we find that the OAH did not act arbitrarily or capriciously when it found that the appellant's medical evidence failed to establish the necessary causal link between his current condition and his previous employment.

[¶ 11] Regarding the opinions of medical experts, we have said

> the causal connection between an accident or condition at the workplace is satisfied if the medical expert testifies that it is more probable than not that the work contributed in a material fashion to the precip-

itation, aggravation or acceleration of the injury. *Claim of Taffner*, 821 P.2d 103, 105 (Wyo.1991). We do not invoke a standard of reasonable medical certainty with respect to such causal connection. *Kaan v. State ex rel. Wyoming Worker's Compensation Div.*, 689 P.2d 1387, 1389 (Wyo. 1984) (*citing Jim's Water Service v. Eayrs*, 590 P.2d 1346 (Wyo.1979)). Testimony by the medical expert to the effect that the injury "most likely," "contributed to," or "probably" is the product of the workplace suffices under our established standard. *Kaan*, 689 P.2d at 1389.

*Pino v. State ex rel. Wyo. Workers' Safety, Comp. Div.*, 996 P.2d 679, 685 (Wyo.2000). However, deference is afforded to the trier of fact in determining the credibility of witnesses and interpreting the evidence. *Morgan v. Olsten Temp. Servs.*, 975 P.2d 12, 15 (Wyo.1999).

> If the hearing record demonstrates ambiguities or inconsistencies that require weighing the evidence and assessing the credibility of witnesses, the trier of fact has the sole responsibility for those functions. They are not the prerogative of the reviewing court. *Matter of Goddard*, 914 P.2d [1233,] 1238 [ (Wyo.1996) ]; *Latimer v. Rissler & McMurry Co.*, 902 P.2d 706, 711 (Wyo.1995). In this regard, we have said, "[f]urthermore, '[w]hen the inconsistencies in the evidence and the claimant's testimony make it impossible for the hearing examiner to determine whether the accident arose out of [and] in the course of his employment, the claimant has failed to sustain his burden.'" *Matter of Worker's Compensation Claim of Thornberg*, 913 P.2d 863, 870 (Wyo.1996) (*quoting Latimer*, 902 P.2d at 711).

> . . . .

> . . . The finder of fact is not necessarily bound by the expert medical testimony, however. *Forni [v. Pathfinder Mines]*, 834 P.2d [688,] 693 [ (Wyo.1992) ]. It is the hearing examiner's responsibility, as the trier of fact, to determine relevancy, assign probative value and ascribe the relevant weight given to medical testimony. *Clark [v. State ex rel. Wyoming Workers' Safety and Compensation Div.]*, 934 P.2d [1269,]

1271 [ (Wyo.1997) ] (*citing Matter of Worker's Compensation Claim of Thornberg*, 913 P.2d at 867). "The hearing examiner [is] also in the best position to judge the weight to be given to the medical evidence." *Matter of Goddard*, 914 P.2d at 1237; *Latimer*, 902 P.2d at 711. "The trier of fact may disregard an expert opinion if he finds the opinion unreasonable or not adequately supported by the facts upon which the opinion is based." Clark, 934 P.2d at 1271.

*Id.* at 15–16.

[¶ 12] The appellant relies heavily on the opinion of Dr. Bauman to establish a causal connection between his condition in 2003–2004 and his injury in 1999.[1] In May 2004, Dr. Bauman stated in a letter:

[The appellant] did have a preexisting condition prior to the injury of May 26, 1999. This was a previous back injury resulting in spinal fusion from L4 to the sacrum. Spinal fusion does cause some increased stress on the disks above the spinal fusion. I do feel, however, that the injury of May 26, 1999, in high probability, caused the acute damage to the L3–4 disk at that time. This disk has now gone on to degenerate even more significantly. I feel that [the appellant] has reached maximum medical improvement and that his prognosis for return to heavy work is poor. He will probably at some time in his life need an extended fusion above the L3–4 level to add on to his previous fusion. If and when he needs the surgery, I think that it will be primarily due to his injury of May 26, 1999, but some people who have fusions from L4 to the sacrum would slowly and continually wear out the L3–4 level even without a specific injury. The fact that [the appellant] was working and doing fairly well until he lifted the oxygen bottle back in 1999 would suggest that most of the initial injury and certainly a great deal of the wearing now of the L3–4 disk is secondary to the second injury. Certainly, 100% of the problem at L3–4 disk is due to a combination of the two injuries, the first one requiring fusion of L4 to the sacrum and the second one injuring and speeding up the degeneration and damage to the L3–4 disk above the previous fusion.

The OAH clearly found this opinion unpersuasive and we will affirm that finding. On January 3, 2000, Dr. Bauman stated in a letter written on the appellant's behalf that he

is not bad enough at this point to need another fusion and indeed I would try at all costs to avoid fusing further up his back. **I think part of this avoidance of further back surgery would be to have him avoid heavy work.**

. . . . He would not be disabled for complete sedentary work involving basically no bending, lifting or twisting, and intermittent sitting and standing. . . . [C]ertainly **any type of labor job I think should be avoided at this time to try to avoid ongoing progressive wearing out of the disks above his previous fusion.**

(Emphasis added.) Against this advice, the appellant admittedly obtained one job that required some lifting and another that required him to stand on a hard floor that "bother[ed his] back." Further, the appellant subsequently suffered two additional injuries that required medical attention. An emergency department report from LDS Hospital on May 27, 2003 notes that "[t]wo days ago [the appellant] was stepping off a curb and landed hard on his feet. He jarred himself and fell over but did not fall to the ground. Since then he has had worse pain in the low back, wrapping around and going towards his groin."

1. The appellant emphasizes a variety of other medical reports from different doctors. To the extent that many of these reports were written soon after the appellant's 1999 injury, they are of no relevance to the dispositive issue in this appeal, namely whether the appellant established a direct causal link between his 1999 injury and his current condition. The appellant sought a "second opinion" from Dr. Mattsson in March 2004. Dr. Mattsson concluded that "very dramatic instability" existed in the appellant's back and recommended that "he get the screws and hooks out" and undergo further "surgery at L3–4." Dr. Mattsson also noted that spinal fusion "produces added stress to the next level above" the fusion. On the issue of causation, however, Dr. Mattsson was unable to give an opinion because he had not been treating the appellant in 1999.

[¶ 13] Even though Dr. Bauman believed in January 2000, that continued labor would hasten the progress of the appellant's degenerative condition, and it is clear from the emergency report that the appellant's accident in May 2003 caused additional pain, Dr. Bauman's medical diagnosis failed to take these activities into account. As we noted above, an "unreasonable or not adequately supported" opinion is grounds for disregarding a medical opinion. *Morgan,* 975 P.2d at 16. The OAH could correctly conclude that, faced with the evidence of other potential causes for the appellant's increasing back pain, the appellant had not met his burden of proving that the 1999 injury caused his current condition because the appellant's medical reports did not attempt to determine the contribution that the subsequent injuries and work history had on the appellant's condition. Indeed, the evidence submitted from Dr. Bauman does not even acknowledge the existence of the subsequent work history or accidents. Instead, Dr. Bauman merely concluded that "100% of the problem at L3–4 is due to a combination of the two injuries."

## CONCLUSION

[¶ 14] The OAH did not act arbitrarily or capriciously in denying the appellant worker's compensation benefits in the instant case because the appellant's medical evidence failed to address the impact that working against medical advice and subsequent injuries had on the appellant's medical condition. Absent such evidence, the appellant failed to meet his burden of proving the essential element of causation.

[¶ 15] Affirmed.