2012 WY 71

**In the Matter of the Worker's Compensation Claim of Catherine Lynnette MORRIS, Appellant (Employee–Claimant),**

v.

**STATE of Wyoming ex rel. WYOMING WORKERS' SAFETY AND COMPENSATION DIVISION, Appellee (Respondent).**

**No. S–11–0167.**

Supreme Court of Wyoming.

May 22, 2012.

Representing Appellant: James C. Worthen of Murane & Bostwick, LLC, Casper, Wyoming.

Representing Appellee: Gregory A. Phillips, Wyoming Attorney General; John D. Rossetti, Deputy Attorney General; Michael

J. Finn, Senior Assistant Attorney General; Kelly Roseberry, Assistant Attorney General.

Before KITE, C.J., and GOLDEN, HILL, VOIGT, and BURKE, JJ.

GOLDEN, Justice.

[¶ 1] Catherine Lynnette Morris (Morris) submitted a worker's compensation claim for permanent total disability (PTD) benefits, and the Wyoming Workers' Safety and Compensation Division (Division) denied her claim. Morris sought review by the Wyoming Medical Commission (Commission), which upheld the Division's denial of benefits. The district court affirmed.

[¶ 2] On appeal, Morris does not contend that the Commission's decision is unsupported by substantial evidence or that the Commission misapplied the law. Morris instead challenges two evidentiary rulings by the Commission: 1) the admission of a psychological report produced after the discovery cutoff; and 2) a limitation on the scope of Morris' testimony to matters not testified to in the Division's discovery deposition of Morris.

[¶ 3] We find no abuse of discretion in the Commission's admission of the psychological report. The Commission did abuse its discretion in the limitation it placed on the testimony of Morris, but Morris did not object below to that limitation and thus waived her right to appeal that issue. We therefore affirm.

## ISSUES

[¶ 4] Morris presents the following issues on appeal:

Issue 1—Did the Hearing Officer err when he admitted the expert report of Dr. Kenneth Bell into evidence?

Issue 2—Did the Hearing Officer err when he denied Ms. Morris the opportunity to present live testimony before the Medical Commission on matters previously discussed in her discovery deposition?

## FACTS

[¶ 5] On August 20, 1995, Morris slipped and fell while working as a master control operator for KFNB–TV. She injured her back and was diagnosed with a left L5 herniated disc with compression of the S1 nerve root. On August 24, 1995, Morris underwent a hemilaminectomy and microdiscectomy. Following her surgery and recovery, Morris returned to work for a different television station and continued working until the fall of 1996, when she stopped working due to increased back pain. In October 1996, Morris underwent a redo of the laminectomy and discectomy at the L5 disc level. Thereafter, Morris was able to work until sometime in 2001.

[¶ 6] On July 1, 2001, Morris was seen in the emergency room following a fall down a set of stairs, a fall that did not occur while Morris was working. She reported low back and left hip pain, and an MRI of her back was obtained. The MRI showed degenerative changes, disc disease at the L2–3 level, and the prior surgery at the L5–S1 level. The radiologist reported the following impression:

1. Postoperative changes of L5–S1 with enhancing scar tissue and no recurrent disc protrusion identified.

2. Desiccated slightly flattened disc L2–3 level with diffuse annular bulge but without discrete herniation or canal stenosis identified.

The Emergency Room Report concluded with the assessment: "low back pain status post fall," and "left hip contusion."

[¶ 7] On September 26, 2001, Morris saw Dr. Douglas Hemler for an independent medical evaluation and impairment rating. Dr. Hemler reviewed Morris' medical history and performed physical and neurological assessments. Dr. Hemler found Morris had a work-related lumbar spine injury with residual S1 radiculopathy following two surgeries. He concluded Morris had reached maximum medical improvement and rated her impairment as a twelve percent whole person impairment. Dr. Hemler felt Morris could lift twenty pounds, sit, walk, and stand as tolerated and that she could work in a sedentary position and perform light duty work.

[¶ 8]   In November 2001, the Division notified Morris of the twelve percent whole person impairment rating and provided Morris a form that gave her the option of accepting the impairment rating or requesting a second opinion.  On January 4, 2002, Morris returned the form to the Division with her signed agreement to the physical impairment rating and her application for a permanent partial impairment award based on that rating.  The Division issued its final determination granting the award on January 8, 2002.

[¶ 9]   On February 9, 2002, Morris was seen at the emergency room after falling down metal stairs at a trailer home.  She was treated for a laceration to her left ankle and reported no other injuries or pain.

[¶ 10]   On April 12, 2002, Morris saw Dr. Robert Narotzky, with whom she had consulted earlier concerning her back pain.  Dr. Narotzky reported that she had an extreme limp, reduced range of motion in her low back, and tenderness at L2–3 and L5–S1.  Testing revealed evidence of a chronic left S1 radiculopathy and concordant pain response at L2–3 and L5–S1.  Dr. Narotzky recommended against fusion at the L2–3 and L5–S1 levels, but he noted "Ms. Morris is being quite persistent."  On May 15, 2002, Dr. Narotzky performed the L2–3 and L5–S1 fusion.

[¶ 11]   On July 9, 2002, Morris had a follow-up appointment with Dr. Narotzky.  Notes from that visit indicate:

She comes in today status post anterior posterior fusion.  She is doing fairly well with regard to her symptoms.  Her preoperative symptoms have resolved.

She is going through a tough time now, as her boyfriend recently left her and she is concerned about her financial situation.

Otherwise, she stated her preoperative pain is gone and she is improving on a daily basis.

She complains today of paraesthesia in her left upper extremity, mainly her pinky and ring finger.

[¶ 12]   From the fall of 2002 into January 2003, Morris' symptoms remained improved over her preoperative symptoms.  In January 2003, Morris complained of pain in her left leg with numbness and tingling.  Because those complaints continued, Dr. Narotzky recommended a psychological evaluation to assist in determining whether Morris would be a candidate for implantation of a spinal cord stimulator.

[¶ 13]   In April 2003, the Division referred Morris to an orthopedic surgeon for an independent evaluation.  The Commission's findings of fact accurately summarized that evaluation as follows:

On April 16, 2003, Morris was evaluated by Dr. Robert Knetsche, an Orthopedic Surgeon at the request of the Division.  Complaints included severe mid to lower lumbar pain, left leg pain, numbness below the knee, and weakness in the left ankle and possibly the quadriceps region.  Dr. Knetsche reviewed the medical treatment history, conducted an examination of Morris, and reviewed radiographic studies.  His assessment was severe low back pain due to multiple surgeries and degenerative disc disease with a possible fusion failure at L2–3 and S1 radiculopathy shown on EMG as well as examination.  The S1 radiculopathy was impairing her left lower extremity in the ankle and the foot.  The Panel notes that it appears the fusion was solid and no records or studies show a fusion failure.

In responding to specific questions by the Division, Dr. Knetsche believed that her current condition was related to the initial surgery following the work injury and set in motion a chain of events resulting in subsequent surgeries.  There did not appear to [be] any preexisting medical conditions.  According to Dr. Knetsche, there was no evidence of symptom magnification on examination or through testing and she has multiple symptoms of back pain.  The Dr. opined that she was essentially totally disabled from work due to her severe back pain that prevents her from sitting or standing for any length of time and limits the distance she can walk and her need to take pain medications.

[¶ 14]   Also in April of 2003, Dr. Narotzky received the results of Morris' psychological evaluation and recommended a trial placement of a spinal cord stimulator.  The stimu-

lator was implanted, and on June 6, 2003, Morris returned to Dr. Narotzky for a follow-up examination. Morris reported being "ecstatic with her results," and the examination showed that her strength was normal, her gait was normal, and she was not using a cane.

[¶ 15] On August 15, 2003, on the Division's referral, Morris saw Dr. Anne MacGuire for an independent evaluation and permanent impairment rating. The Commission's findings accurately summarized Dr. MacGuire's evaluation as follows:

Dr. Anne MacGuire authored an opinion medical evaluation report on August 25, 2003. Dr. MacGuire's report reflects a detailed medical record review and Dr. MacGuire also conducted a physical examination. Morris was poorly conditioned. She had generally equal leg circumferences and she was able to squat completely. She showed positive pain behaviors throughout the evaluation and had inconsistent straight leg maneuvering results. She was able to walk without the use of a cane and getting on and off the examination table. She had giveaway weakness in her lower extremities that was inconsistent with her ability to stand. Dr. MacGuire then performed a rating based on the injury to the L5–S1 lumbar level. Dr. MacGuire was concerned about the impact of the L2–3 level and whether it should be rated as there was no indication the L2–3 level was related to the work injury and there were notes of prior injuries including injuring her back lifting laundry and a motor vehicle accident. The L2–3 level was likely related to degenerative conditions and poor health habits, including smoking and drug use (Dr. MacGuire apparently was not aware of the post accident falls and the complaints that began at that time). Dr. MacGuire did not include the L2–3 level in the rating. Morris was rated with a 23% whole person impairment. Dr. MacGuire felt she could return to light sedentary work and she has been able to drive herself to Denver from Casper, and was taking care of a disabled son. Dr. MacGuire opined that when factoring her known history of drug and substance abuse, emotionally she may consider herself disabled.

[¶ 16] On September 18, 2003, the Division notified Morris of the twenty-three percent whole person impairment rating and again provided Morris a form that gave her the option of accepting the impairment rating or requesting a second opinion. On October 1, 2003, Morris returned the form to the Division with her signed agreement to the physical impairment rating and application for a permanent partial impairment award based on that rating. The Division issued its final determination granting the award on October 7, 2003.

[¶ 17] During the remaining months of 2003, Morris continued to complain of low back pain and numbness in her legs, and Dr. Narotzky referred her to Dr. Tuenis Zondag, a pain management physician. Dr. Zondag obtained a history, conducted an examination, and provided the following assessment:

1.  Postlaminectomy syndrome at the L5–S1 with fusion with footdrop on the left. On examination, Patient has atrophy and weakness and difficulty with gait.

2.  Status post fusion of symptomatic disc L2–L3.

3.  Major depression disorder.

Dr. Zondag prescribed an antidepressant and pain and sleep medications. He opined that Morris is not able to return to competitive employment.

[¶ 18] Acting on an application that dated back to November 29, 2002, the Social Security Administration (SSA), on December 15, 2004, found that Morris was entitled to Social Security Disability Benefits dating back to January 1, 2001. The SSA determination noted that Morris asserted a disability "due to severe low back and left leg pain due to post-laminectomy syndrome at L5–S1 with foot drop on the left, chronic hepatitis C, a major depressive disorder, history of PTSD, and a history of polysubstance abuse." The SSA's findings in support of its disability determination included the following:

2.  The claimant has not engaged in substantial gainful activity since January 1, 2001.

3. The medical evidence establishes the claimant is status-post disectomy [sic] and has post-laminectomy syndrome with foot drop on the left, chronic hepatitis C, a major depressive disorder, and a history of PTSD, impairments which are considered to be "severe" under Social Security Regulations.

[¶ 19] Between December 2004 and Morris' July 2008 application for permanent total disability benefits, Morris' medical records show the following:

*December 2004:* Morris experienced difficulty with her spinal stimulator following a vehicle accident. She also slipped on ice and fell on her left leg;

*January 2005:* Morris was seen in the emergency room for apparent seizures while being transported in a police vehicle following arrest;

*September 2005:* Morris fell climbing down from a ladder and landed on concrete with pain in her right shoulder and arm;

*April 2006:* Morris reported to the emergency room with chest pain, facial twitching and confusion;

*August 2007:* Morris saw Dr. Daniel Cummings who reported:

This 48–year–old woman comes in today as a new patient. She had a hysterectomy with ovarian removal about 6½ months ago for cervical cancer and an ovarian tumor. She felt good for approximately 3 months after surgery but has had severe fatigue, weakness, nausea, and diarrhea for the past 3 months. She also had vomiting for about 5 days recently that is now gone. She has had recurrent hot flashes while taking Premarin 0.625 mg once daily; she had fewer hot flashes when she took the same dose of Premarin twice daily. She has had chronic spinal pain after spinal surgery for many years and previously for about 3 years took Oxy-Contin 20 mg 3 times daily plus an extra immediate release dose of oxycodone when needed for breakthrough pain; she took herself off all pain medications against medical advice about 2 years ago because of rather severe dysphoria. Since then she has re-fused to take any chronic pain medications, including fentanyl and Suboxone. A spinal stimulator was inserted into her right buttock about three years ago with significant benefit. She has chronic upper abdominal pain for which she takes nonprescription Prilosec 40 mg every morning prior to a breakfast low in protein.

*December 2007:* Morris saw Dr. Narotzky and reported that her spinal cord stimulator was shut off during gall bladder surgery in September and since then she had experienced increased pain in her back and right leg. Dr. Narotzky's impression was "failed back syndrome," and he ordered additional radiographic and nerve conduction studies;

*January 2008:* Radiographic studies of the cervical spine showed multilevel minimal disc bulging with no stenosis or narrowing. Lumbar spine studies showed the fusions at L2–3 and L5–S1, multilevel disc bulging, possible neural foraminal narrowing, with no cord compression or central stenosis at any level;

*February 2008:* Dr. Narotzky performed surgery to implant a new spinal cord stimulator and to treat left carpal tunnel syndrome. The Division denied benefits for any costs related to the carpal tunnel treatment, and the record contains no appeal of that denial;

*April 2008:* Morris apparently had follow-up treatment related to neck pain as the record contains the Division's final determinations denying payment of charges for a cervical CT and cervical spine treatment.[1]

[¶ 20] On July 20, 2008, Morris submitted an application to the Division for PTD benefits, and on July 24, 2008, the Division issued a final determination denying the application. The Division denied the PTD benefits on the ground that Morris had not shown that her 1995 back injury caused her permanent disability. Morris appealed the Division's denial, and on August 6, 2008, the matter was referred to the Commission for hearing.

[¶ 21] On October 9, 2008, the Commission issued a scheduling order setting the case for an evidentiary hearing on March 13,

---

1. The Commission's decision, at Finding No. 45, includes a discussion of the cervical spine imaging. On review of those records, however, they appear to be the records of a patient other than Morris. Those findings are therefore not discussed in this opinion.

2009. On January 28, 2009, Morris requested a continuance of the evidentiary hearing, and on January 30, 2009, the Commission issued an order rescheduling the evidentiary hearing for July 10, 2009. On May 19, 2009, the Division and Morris filed a stipulated motion to again continue the evidentiary hearing, and on May 26, 2009, the Commission issued an order vacating the evidentiary hearing and setting a status conference for September 14, 2009. On September 15, 2009, the Commission issued an order setting the case for an evidentiary hearing on January 20, 2010. The order also scheduled a pretrial conference for December 21, 2009, and directed that all discovery be completed prior to the pretrial conference.

[¶ 22] On December 21, 2009, following the pretrial conference, the Commission issued a Final Scheduling Order confirming the January 20, 2010, evidentiary hearing and requiring Morris to file her disclosure statement by January 4, 2010, and the Division to file its disclosure statement by January 11, 2010. After the pretrial conference, on December 30, 2009, the Division received the psychological evaluation and report of Dr. Kenneth Bell. Counsel for the Division provided a copy of the report to Morris' attorney and advised him that the Division would be designating the report as an exhibit but not calling Dr. Bell as a witness. Counsel also advised Morris' attorney that Dr. Bell would be out of his office and unavailable for a deposition until January 11, 2010.

[¶ 23] After the parties filed their disclosure statements, Morris filed a motion in limine seeking to exclude the Division's Exhibit 2, the psychological evaluation prepared by Dr. Bell. Morris objected to the report as untimely because it was submitted after the discovery cutoff and "raises a whole host of new issues not previously addressed by any medical provider or psychological evaluation of the Employee–Claimant." On January 15, 2010, the Commission issued an Order Ruling on Motion in Limine and Case Management Order. In that order, the Commission, through its hearing officer, denied the request to exclude Dr. Bell's report but ordered that Dr. Bell would not be permitted to testify at the hearing unless Morris consented to that testimony. After addressing the motion in limine, the hearing officer added the following provision to the order:

In addition, the deposition of Morris was taken and submitted as an exhibit to the Division's disclosure statement. Counsel for Morris has not objected to the inclusion of this deposition. The disclosure statements have been submitted to the Panel and read by the Panel. As such, those matters inquired into in Morris' deposition shall not be subject to testimony at the hearing.

[¶ 24] On January 19, 2010, the Division and Morris filed a stipulated motion to vacate the evidentiary hearing and submit the case on briefs only. The joint motion noted Morris' motion in limine to exclude Dr. Bell's report, and it noted entry of the Commission's Order Ruling on Motion in Limine and Case Management Order. The motion stated that "the parties agree that this matter should be submitted to the Commission on the Disclosure Statements," and it further stated that the "parties agree this Motion does not constitute a waiver, on behalf of Employee–Claimant, of any objection on appeal to the Medical Commission's January 15, 2010 Order Ruling on Motion in Limine and Case Management Order."

[¶ 25] On January 20, 2010, the Commission convened to consider the case on the parties' written submissions, and on February 8, 2010, the Commission issued its decision upholding the Division's denial of PTD benefits. In so ruling, the Commission concluded:

11. Morris has several physical conditions that appear to impact her ability to work including poorly explained seizures that began prior to the work accident, cervical pain and symptoms into her upper extremities, carpal tunnel syndrome, upper back pain, jaw pain and hand pain. She also has hepatitis. The evidence is also clear that her psychological condition has a great impact on her condition and ability to work. The record shows symptom exaggeration, pain behaviors, inconsistent and inaccurate exam results, non-anatomic symptoms, give way weakness, pain with light touching, and equal leg measure-

ments showing no atrophy or muscle wasting. Morris has a long history of poly substance abuse and the file documents methamphetamine use to at least 2008. Methamphetamine use was reported to increase her low back pain. Psychological diagnosis have noted depression, psychological problems impacting her physical symptoms, post traumatic stress disorder, substance abuse, and malingering or somatoform disorder.

* * * *

13. Morris' overall impairment or disability from the L5–S1 injury, the surgeries to that level, and the residual S1 radiculopathy, is only moderate. Morris' greatest obstacles to her overall well being and ability to secure employment are related to her profound psychological conditions and their sequella and substance abuse. Her many other unrelated physical issues also impact her ability to find gainful employment.

[¶ 26] Morris sought review of the Commission's decision in district court, and the district court affirmed, finding no abuse of discretion in the admission of Dr. Bell's report or in the limitation on Morris' testimony. Morris filed a notice of appeal to this Court, again challenging only the Commission's evidentiary rulings and not its findings of fact or conclusions of law.

## STANDARD OF REVIEW

[¶ 27] We review administrative decisions based on the factors set forth in the Wyoming Administrative Procedure Act, which provides:

(c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:

(i) Compel agency action unlawfully withheld or unreasonably delayed; and

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

(B) Contrary to constitutional right, power, privilege or immunity;

(C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;

(D) Without observance of procedure required by law; or

(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

Wyo. Stat. Ann. § 16–3–114(c) (LexisNexis 2011).

[¶ 28] "Admissibility of evidence is committed to the discretion of the hearing examiner. A hearing examiner abuses his discretion when his decision shocks the conscience of the court and appears to be so unfair and inequitable that a reasonable person could not abide it." *Watkins v. State ex rel. Wyo. Med. Comm'n*, 2011 WY 49, ¶ 21, 250 P.3d 1082, 1089 (Wyo.2011) (quoting *Goddard v. Colonel Bozeman's Rest.*, 914 P.2d 1233, 1238 (Wyo.1996)); *see also McIntosh v. State ex rel. Wyo. Med. Comm'n*, 2007 WY 108, ¶ 42, 162 P.3d 483, 494 (Wyo.2007). We have also defined the exercise of discretion as "a composite of many things, among which are conclusions drawn from objective criteria; it means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously." *Wilson v. Lucerne Canal & Power Co.*, 2003 WY 126, ¶ 11, 77 P.3d 412, 416 (Wyo.2003) (quoting *Pasenelli v. Pasenelli*, 2002 WY 159, ¶ 11, 57 P.3d 324, 329 (Wyo.2002)).

[¶ 29] In an appeal from a district court's appellate review of an administrative decision, we review the case as if it came directly from the hearing examiner, affording no deference to the district court's decision. *Deloge v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2011 WY 154, ¶ 5, 264 P.3d 28,

30 (Wyo.2011); *In re Kaczmarek,* 2009 WY 110, ¶ 7, 215 P.3d 277, 280 (Wyo.2009).

## DISCUSSION

### Report of Dr. Bell

■ [¶ 30] This Court has held that when a party claims an error in the admission of evidence on the basis of unfair surprise and prejudice, we will not consider that alleged error unless the party requested a continuance upon learning of the alleged surprise. *Parrish v. Groathouse Constr., Inc.,* 2006 WY 33, ¶ 15 n. 4, 130 P.3d 502, 507 n. 4 (Wyo.2006); *Meyer v. Rodabaugh,* 982 P.2d 1242, 1245 (Wyo.1999) (failure to request continuance on ground of unfair surprise precludes party from contending on appeal that he was prejudiced). Morris did not request a continuance after receiving Dr. Bell's report. Nonetheless, Morris did clearly identify her objection to the report and moved for its exclusion, and the parties stipulated to preservation of that objection. Under these circumstances, we will consider the claim of error in allowing the report to be admitted into evidence.

■ [¶ 31] We have considered the following factors in determining whether under the circumstances an expert report could be fairly admitted after the disclosure deadline:

(1) whether allowing the evidence would incurably surprise or prejudice the opposing party;

(2) whether excluding the evidence would incurably prejudice the party seeking to introduce it;

(3) whether the party seeking to introduce the testimony failed to comply with the evidentiary rules inadvertently or willfully;

(4) the impact of allowing the proposed testimony on the orderliness and efficiency of the trial; and

(5) the impact of excluding the proposed testimony on the completeness of the information before the court or jury.

*Winterholler v. Zolessi,* 989 P.2d 621, 628 (Wyo.1999).

[¶ 32] The hearing officer, in denying the motion to exclude Dr. Bell's report, reasoned as follows:

1. This case originates from a work injury in 1995 and involves a claim for permanent total disability. This matter was referred to the Medical Commission in August of 2008. Several hearing dates were set that were continued at the request of counsel due to ongoing discovery. The last continuance motion was a stipulated motion filed in May 2009, and one of the represented grounds for the continuance was the Division's need for an independent medical exam. Both sides have been less than expeditious in conducting discovery.

2. It appears that examinations were obtained from Dr. Ruttle, an orthopedist, and Dr. Kenneth Bell, a psychologist. Originally the Division was going to use a psychologist in Colorado, but at the request of counsel for Morris, the Division had to find a psychologist in Casper. Presumably, had another provider in Colorado been located earlier, a report would have been generated sooner. However, some delay was encountered accommodating the request of counsel for Morris.

3. The Report of Dr. Bell notes that he saw Morris between August and December 2009. It appears that multiple visits were necessary for Dr. Bell to review massive records, obtain a complete history, perform psychological testing, and conduct a psychological evaluation. The last time Morris saw Dr. Bell was December 15, 2009. Counsel for Morris appears to have known of this ongoing evaluation and even wrote to the counsel for the Division in late December regarding this matter. Counsel for Morris did not file a motion to compel, a motion to expedite the report, a motion to enlarge the time, or a motion to continue, based on this pending report. Counsel for the Division raised this issue with Dr. Bell and that his report was forthcoming at the pretrial conference held on December 21, 2009. Counsel for Morris did not object or raise any issue as to this report at the pretrial conference. Further, since it was known by Morris and her counsel that an evaluation was occurring, counsel for Morris could have arranged an independent psychological evaluation.

4. Once the report was received, counsel for Morris acknowledges he was given the opportunity to depose Dr. Bell the week before the hearing. While this is short notice, counsel does not state why he was not available for the entire week of January 11, 2010 or why other counsel in his office could not have participated in the deposition. In fact, at the pretrial conference, counsel for Morris advised his schedule was fairly open for purposes of completing depositions in this case. There is no reason shown why counsel could not have obtained an expedited transcript of the deposition to submit to the hearing panel.

5. The parties have submitted what amounts to massive disclosure statements. The factual history and materials referenced in Dr. Bell's report are contained elsewhere in the disclosure statements of counsel and the opinions of Dr. Bell are not new, but likewise noted through other documents in the disclosure statements, (i.e., inaccurate history, substance abuse, psychological problems, exaggeration of symptoms, a psychological basis for her physical symptoms, prior and subsequent traumatic events, and a history of symptoms that were not medically verified). As such, there is no true surprise, and these matters are documented elsewhere in record.

6. Based on a complete consideration of the history of this case, the large volume of materials submitted, a review of the factual materials submitted, the matters at issue in Dr. Bell's report, the arguments of counsel, and the interests of justice and equity, the motion in limine should be denied as to Dr. Bell's report. However, under the facts presented, Dr. Bell shall not be allowed to testify at the hearing either through deposition or in person, unless consented to by counsel for Morris.

[¶ 33] Although the hearing officer did not expressly identify the *Winterholler* factors in his analysis, the above analysis does illustrate that the hearing officer considered the appropriate factors. In particular, the hearing officer considered surprise, prejudice, the impact of excluding the report, whether the timeliness of the report was due to a willful act of the Division or its counsel, and the orderliness and efficiency of the proceedings.

[¶ 34] Of particular importance, of course, is the question of unfair surprise and prejudice to Morris. On this question, we find that it is difficult, given the expansive record and medical history that the Commission had before it, to find either unfair surprise or prejudice. Dr. Bell was not the first medical provider to note the trauma in Morris' history or to opine that her psychological issues and addictive behaviors may impact her treatment, recovery, and her ability to return to gainful employment. Likewise, the record is replete with evidence of Morris' physical ailments unrelated to her back injury, and opinions that those conditions disable her from continued employment. Included in this evidence is Claimant's Exhibit 20, the 483–page Social Security Administration file relating to Morris' application for Social Security Disability benefits, which contains the disability determination itself and extensive medical and psychological reports on Morris.

[¶ 35] Under these circumstances, the Commission's admission of Dr. Bell's report does not "shock the conscience of the Court" or "appear to be so unfair and inequitable that a reasonable person could not abide it." *See Watkins,* ¶ 21, 250 P.3d at 1089. We thus find no abuse of discretion in the admission of Dr. Bell's report.

### *Limitation on the Testimony of Morris*

■ [¶ 36] In her second contention on appeal, Morris argues that the Commission erred by limiting her testimony to matters not discussed in the discovery deposition taken by the Division. We agree.

[¶ 37] This Court has described a party's right to due process of law in a contested case proceeding as follows:

Parties to administrative proceedings are entitled to due process of law. *Pfeil v. Amax Coal West, Inc.,* 908 P.2d 956, 961 (Wyo.1995); *Amoco Production Company v. Wyoming State Board of Equalization,* 882 P.2d 866, 872 (Wyo.1994). "Procedural due process principles require reasonable notice and a meaningful opportunity to be

heard before government action may substantially affect a significant property interest." *Pfeil*, 908 P.2d at 961; *see also Whiteman v. Wyoming Workers' Safety and Compensation Division, Department of Employment*, 984 P.2d 1079, 1083 (Wyo. 1999).

The procedures outlined in the Wyoming Administrative Procedure Act are designed to provide parties in administrative proceedings with due process. *Roush v. Pari–Mutuel Commission of State of Wyoming*, 917 P.2d 1133, 1143 (Wyo.1996). For example, Wyo. Stat. Ann. § 16–3–107(a) (LEXIS 1999) states in relevant part: "In any contested case, all parties shall be afforded an opportunity for hearing after reasonable notice." Additionally, Wyo. Stat. Ann. § 16–3–107(j) (LEXIS 1999) provides in pertinent part: "Opportunity shall be afforded all parties to respond and present evidence and argument on all issues involved."

*Amoco Prod. Co. v. Wyo. State Bd. of Equalization*, 7 P.3d 900, 905 (Wyo.2000).

[¶ 38]   We have further held that "[w]hile administrative agencies are afforded considerable latitude in the procedures to be followed in such hearings, that flexibility does not go so far as to permit procedures which are contrary to statutory mandate or procedures which allow the agency to act without collecting the necessary facts." *Jackson v. State ex rel. Wyo. Workers' Comp. Div.*, 786 P.2d 874, 878 (Wyo.1990).   Of course, important information in any worker's compensation case will be the claimant's version of events and chronology of symptoms coupled with that claimant's demeanor and affect during testimony. *See Kenyon v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2011 WY 14, ¶ 38, 247 P.3d 845, 856 (Wyo. 2011) (fact finder is in best position to judge a witness' demeanor, truthfulness and veracity); *Herrera v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2010 WY 103, ¶ 15, 236 P.3d 277, 282 (Wyo.2010) (fact finder has opportunity to observe witness and hear testimony and court therefore defers to its credibility determinations); *Huntington v. State ex rel. Wyo. Workers' Comp. Div.*, 2007 WY 124, ¶ 11, 163 P.3d 839, 842 (Wyo.2007) (as-

sessing witness credibility is responsibility of the trier of fact).

[¶ 39]   Balanced against these considerations is the agency's responsibility to exclude "irrelevant, immaterial or unduly repetitious evidence." *See* Wyo. Stat. Ann. § 16–3–108(a) (LexisNexis 2011).   This Court has said, however, that "evidence which in the context of the litigation is merely repetitious or time consuming may be excluded, but only if time consideration substantially outweighs the incremental probative value of the proffered evidence." *Winterholler*, 989 P.2d at 629.   And, like other courts, we have observed that live testimony is preferred over deposition testimony. *See King v. State*, 780 P.2d 943, 954 (Wyo.1989) (W.R.E.804(a) unavailability requirement "reflects a preference for live testimony"); *Waggoner v. Gen. Motors Corp.*, 771 P.2d 1195, 1201 (Wyo.1989) (W.R.C.P. 32 is "premised on the principle that oral testimony is preferable to a deposition") (citing *Napier v. Bossard*, 102 F.2d 467 (2nd Cir.1939) ("per Learned Hand, deposition is treated as a substitute—second best, not to be used when original is available")).

[¶ 40]   Given a claimant's right to present evidence on all of the issues involved in the case, and given the preference for live testimony over a cold transcript, we are at a loss to understand why the hearing officer in this case would sua sponte move to save time and avoid repetition by choosing a discovery deposition over the claimant's live testimony. It is true that there had been no objection to the Division's proffer of Morris' deposition transcript, but, likewise, there had been no objection to Morris' designation as a witness to testify "concerning all matters in this case."   If the hearing officer desired to limit the taking of evidence to save time and avoid redundancy, the evidence restricted should have been the deposition testimony, in favor of the live testimony.   The live testimony was the more probative of the evidence because, by its very nature, it offered the Commission more and better information concerning the claimant and her benefits claim than the transcript could provide.

[¶ 41]   A worker's compensation claimant has the right to testify in the contested case hearing that will determine that claimant's

entitlement to benefits, and while a hearing officer may limit that testimony in a manner consistent with the applicable rules of evidence, we find that it is arbitrary to limit it to matters not discussed in a discovery deposition. We thus find that the Commission abused its discretion in limiting Morris' testimony in this case.[2]

[¶ 42] Our finding of an abuse of discretion does not, however, end the inquiry in this case. This Court has long held that it will not consider issues on appeal that were not first raised below in the administrative action. *Beall v. Sky Blue Enter., Inc.*, 2012 WY 38, ¶ 15, 271 P.3d 1022, 1029 (Wyo.2012); *Watkins*, ¶ 22, 250 P.3d at 1089–90; *Dale v. S & S Builders, LLC*, 2008 WY 84, ¶ 33, 188 P.3d 554, 562–63 (Wyo.2008); *Shaffer v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 960 P.2d 504, 507–08 (Wyo.1998); *McCulloch Gas Transmission Co. v. Pub. Serv. Comm'n of Wyoming*, 627 P.2d 173, 180 (Wyo.1981); *see also* W.R.A.P. 12.09(a) ("Review shall be conducted by the reviewing court and shall be confined to the record as supplemented pursuant to Rule 12.08 and to the issues set forth in the petition and raised before the agency."). We have explained:

> We have recognized in more than a few decisions ... that orderly procedure and good administration require that objections to the proceedings of an administrative agency be made while it has opportunity for correction in order to raise issues reviewable by the courts.

*Beall*, ¶ 15, 271 P.3d at 1029 (quoting *Watkins*, ¶ 22, 250 P.3d at 1089).

[¶ 43] The rule applies equally to claims of procedural errors or due process violations.

> A party is obligated to object at the agency level to the administrative tribunal's procedure so that the tribunal will have an opportunity to correct its errors. If a party has an opportunity to object to the administrative tribunal's procedural rulings and fails to do so, it waives its right to challenge the administrative tribunal's procedure on appeal.

*Amoco Prod. Co.*, 7 P.3d at 906 (citations omitted); *see also Wyo. Workers' Safety & Comp. Div. v. Wright*, 983 P.2d 1227, 1232 (Wyo.1999) ("'Due process' is not a talismanic term which guarantees review in this court of *procedural errors correctable by the administrative tribunal*.") (emphasis in original), *overruled on other grounds, Torres v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2004 WY 92, 95 P.3d 794 (Wyo.2004).

[¶ 44] Contrary to her approach to the ruling on the admission of Dr. Bell's report, Morris did not specifically object to the limitation the Commission placed on Morris' testimony. Morris did not object to the admission of the Division's discovery deposition, she did not file an objection to the Commission's order limiting her testimony, and, unlike the issue of Dr. Bell's report, she did not identify the limitation as a ruling to which she objected when she stipulated to the submission of the case on the documents. Under these circumstances, we cannot find a preservation of her objection in the stipulated motion to have the case heard on the documents. *See In re Dunning*, 982 P.2d 704, 708 (Wyo.1999) (to avoid a waiver, "objections must have particularity so as to properly identify the question and to give notice of the contention").

[¶ 45] Thus, although the Commission abused its discretion with the limitation it placed on Morris' testimony, we find that the issue was not properly raised before the Commission, and we will not consider it as grounds for reversal.[3]

---

**2.** With this holding, we do not intend to suggest that the Commission may not use the expedited procedure provided for in Chapter XI, Section 1 of its Rules. The rule allows the claim to be reviewed on the documents, without the presentation of live testimony, upon agreement of the parties or if there is no disputed issue of material fact. Additionally, it provides for a formalized designation of the proceeding, presumably at the outset of the case. The expedited proceeding thus differs from the type of limitation placed on

the claimant's testimony in this case, just before the hearing.

**3.** A claimant must be given the opportunity to present his or her own live testimony, without the type of restriction the Commission imposed in this case. We are convinced, however, under these particular circumstances, with the weight of contrary evidence the Commission had before it, that the live testimony of Morris, even without

## *CONCLUSION*

[¶ 46]   This Court finds no abuse of discretion in the Commission's admission of Dr. Bell's psychological report, but we find that the Commission did abuse its discretion in the limitation it placed on the testimony of Morris.   Morris did not object below to that limitation, however, and we thus conclude she waived her right to appeal that issue. The decision of the Commission is affirmed.

the impermissible limitations, would not have changed the result in this case.