# IN THE SUPREME COURT, STATE OF WYOMING

## 2014 WY 12

**OCTOBER TERM, A.D. 2013**

*January 24, 2014*

IN THE MATTER OF THE
WORKER'S COMPENSATION
CLAIM OF:

SHIRLENE HATHAWAY,

Appellant
(Petitioner),

v.

STATE OF WYOMING ex rel.
WYOMING WORKERS' SAFETY
AND COMPENSATION DIVISION,

Appellee
(Respondent).

S-13-0108

*Appeal from the District Court of Uinta County*
*The Honorable Dennis L. Sanderson, Judge*

*Representing Appellant:*
    Robert A. Nicholas, Nicholas Law Office, Cheyenne, Wyoming

*Representing Appellee:*
    Peter K. Michael, Wyoming Attorney General; John D. Rossetti, Deputy Attorney General; Michael J. Finn, Senior Assistant Attorney General; Samantha Caselli, Assistant Attorney General

*Before KITE, C.J., and HILL, VOIGT\*, BURKE, and DAVIS, JJ.*

*\* Justice Voigt retired effective January 3, 2014*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**DAVIS**, **Justice**.

[¶1]   A score of years ago, Appellant Shirlene Hathaway was attacked by a patient and suffered modest physical injuries while working at the Wyoming State Hospital.  Four years later, she was denied permanent total disability (PTD) benefits because maximum medical improvement had not been reached.  She continued seeking medical treatment and then reapplied for PTD benefits in 2009.  The Wyoming Workers' Safety and Compensation Division (Division) denied her second claim, and the Medical Commission held a contested case hearing.  Based upon the evidence presented, a panel of the Medical Commission denied the subsequent application for PTD benefits, determining that Appellant had not met her burden of proving entitlement to those benefits under the Wyoming Workers' Compensation Act or the odd lot doctrine.  It found that Appellant's only disabling condition was psychological and not related to any compensable physical injury, and that she was thus limited to six months of benefits, which she had already received.  Appellant sought review of the Medical Commission's decision, and the district court affirmed.  Finding no error, we also affirm.

## ISSUE

[¶2]   The overarching question in this appeal is whether the condition causing Appellant's disability is purely psychological, and not entirely or at least in part physical.  We therefore restate the controlling issue as follows:

> Is the Medical Commission's determination that Appellant was not entitled to PTD benefits because her disabling condition is solely psychological and not related to any compensable physical injury supported by substantial evidence and consistent with applicable law?

## FACTS

[¶3]   On November 5, 1994, Appellant was injured while working as a psychiatric aide at the Wyoming State Hospital in Evanston, Wyoming.  Her injuries were the result of an assault by an obese female patient, who, *inter alia*, hurled her to the ground, stomped on her, and threw her over a desk.

[¶4]   After being attacked, Appellant managed to drive herself to the local county hospital where she was assessed, treated and discharged from the emergency room the same day.  During this initial visit to the emergency room, Appellant complained of pain in the low back and left buttocks, but denied headaches, vision issues, chest or abdominal pain, or upper extremity trauma.  The emergency room chart also states that Appellant's jaw showed "some crepitance of TMJs but no broken or loose teeth."  The report noted that Appellant "has a past history of back injury in 1988 with chronic left hip and low

1

back pain with numbness off and on chronically." Appellant was prescribed pain medication, discharged, and cleared to return to light-duty work.

[¶5] Two days later, Appellant returned to the emergency room for "recheck of her neck and back pains" and received an additional prescription for pain medication. According to the medical report, Appellant was also prescribed Paxil "for treatment of her chronic pain syndrome which dates back to 1988." A week later, Appellant returned to the emergency room where she was diagnosed with "[f]ully resolving myalgia with mild concussion secondary to trauma suffered 9 days ago." Based upon this evaluation, the treating physician advised her to check back in "about 7 days after going to physical therapy 2 more times . . . [and she] will need to be excused from work . . . with a date to be determined in the future depending on how [she] responds to rest, medication and physical therapy." Throughout the remainder of November 1994, Appellant underwent physical therapy and continued her periodic visits to the hospital. In early December of 1994, Appellant had two broken teeth repaired, which the dentist attributed to a "major blow" to the face.

[¶6] Appellant continued working at the State Hospital, but was terminated roughly one year after the assault. The State Hospital terminated her because she could not perform her job duties as a psychiatric technician or perform the duties of any other position available at the facility.

[¶7] Over the past two decades Appellant has seen numerous doctors for a plethora of psychological and physical problems. Our review of the record reveals that after her initial visits to the emergency room in November of 1994, Appellant has been examined or treated by well over ten different doctors for a variety of reasons. For ease of comprehension, we will distill the facts and detail only pertinent portions of Appellant's lengthy medical history during this time frame.

[¶8] Early on, Appellant was referred to physiatrist (physical rehabilitative medicine specialist) Dr. Corey Anden for diagnostic testing. In February of 1995, she reported to Dr. Anden that she had persistent pain in her neck, head and low back. The initial physical examination by Dr. Anden found that Appellant had approximately 50% of the normal range of motion in the lumbar, sacral and cervical areas. However, after reviewing subsequent MRI studies, Dr. Anden found "no significant abnormalities other than minimal bulging discs at C3-4, C6-7, L4-5, and L5 S1." Dr. Anden determined the MRI results to be "essentially unremarkable" and that at most Appellant suffered from "muscle tension and muscle strain." Dr. Anden also noted that if Appellant "refuse[d] psychological evaluation and treatment, I don't know that I can continue to treat her."

Nevertheless, Appellant was referred for chiropractic evaluation and treatment,[1] and Dr. Anden's office scheduled Appellant an appointment at the University of Utah Pain Clinic.[2]

[¶9]   Several months later, in June 1995, Dr. Anden found that Appellant had reached maximum medical improvement (MMI), and assigned a 7% whole person impairment rating.[3]   She felt that Appellant could return to light level work and activities with lifting, sitting and other restrictions based on the degree of impairment.

[¶10]  Also in June of 1995, Appellant underwent a comprehensive neuropsychological examination by Drs. Linda Gummow and Robert Conger to assess her cognitive and socio-emotional status related to the assault.  The test results demonstrated she was in "pre-rehabilitation status" due to her physical symptoms, and she was assigned a 21% psychological impairment rating.   These psychologists recommended continued chiropractic treatment, relaxation training for pain management, head trauma education to assist with anxiety, personal counseling for depression, participation in volunteer work, and possible referral to the Utah Pain Clinic.

[¶11]  Throughout the next three years, Appellant continued to seek medical attention on a regular basis.  In November of 1996, Dr. Anden determined that ongoing chiropractic care was no longer justified.  She explained "that based on the objective evidence, there was not anything significantly wrong and in my opinion, she should be reassured that there is not something wrong; however, she is convinced and feels a need to find something wrong with her." Based upon their differences as to her diagnosis and care, Dr. Anden decided to stop treating Appellant.

[¶12]  Dr. Michael Adams, a primary care physician, began treating Appellant in 1997. He diagnosed her with fibromyalgia and post-traumatic stress due to the attack at the State Hospital.  In 1998, psychologist Dr. Gummow reevaluated Appellant, this time diagnosing mild head injury with pain disorder and also a mood disorder with depressive

---

[1] Appellant began chiropractic treatment with Dr. Hoover in 1995.  He determined that she had chronic pain of the neck and low back with loss of strength.  Appellant continued to receive chiropractic treatment from Dr. Hoover throughout the next fourteen years.

[2] Dr. Anden made the appointment with the University of Utah Pain Clinic to provide Appellant with a second opinion.  Dr. Anden's notes state:

> I suggested referral for a second opinion to the University of Utah Pain
> Clinic as she does not seem to "trust" my opinion.  She declined this and
> would like to continue to work with me.  I have however, tentatively set
> her up an appointment . . . .

[3] In August of 1995, Appellant was also evaluated by Dr. Scott Anthony, who concurred with this impairment rating.

features. Dr. Gummow again recommended that the Utah Pain Clinic provide further therapy.

[¶13] In the latter part of 1998, Appellant applied for permanent total disability benefits and medical benefits for the treatment of a heart condition and a hernia. At the request of the Division, another evaluation was performed by a different psychologist, Dr. Jennings. He concluded that Appellant may somatize her physical symptoms, which he explained meant that she was overly involved with her physical condition. Dr. Jennings also found that she suffered from dementia due to head trauma, but not depression. Based upon a review of the medical information on file, the Division denied Appellant's claim, and the matter was referred to the Office of Administrative Hearing (OAH).

[¶14] A contested case hearing was held in November of 1999. Three issues were presented to the OAH examiner: (1) compensability of treatment for heart symptoms; (2) payment for a hernia operation; and (3) application for permanent total disability benefits. Appellant's application for payment of treatment for her heart and chest pains was granted, but she was denied benefits for treatment of the hernia. The OAH also denied her claim for PTD benefits because Appellant had not reached maximum medical improvement and therefore required further evaluation and treatment. While it did not deny permanent total disability benefits on the merits, the OAH found as follows:

> The status of the Claimant's impairment is in dispute. Physically, the Claimant purportedly suffers from fibromyalgia/chronic pain. Neurologically, most of the medical evidence and testimony do not show a closed head injury. Only one physician rated any physical impairment (Dr. Anden), and that physician later terminated the physician-patient relationship because of difficulties with the Claimant. Psychological testing by two sources indicate the Claimant somatizes her physical condition. Vocational evaluators see the same phenomenon. In short, the Claimant presents worse than she actually is.

[¶15] In August of 2000, Appellant was seen by Dr. John Speed, a physical medicine rehabilitation physician at the University of Utah Pain Clinic. He assessed Appellant as suffering from somatoform pain disorder with associated depression and cognitive defects. He referred her to Dr. George Mooney, also with the Utah Pain Clinic, for a psychological evaluation. After various tests and a complete evaluation, Dr. Mooney's diagnosis included a somatoform disorder, major depressive disorder, musculoskeletal injuries, and chronic pain. He noted that Appellant "has had persistent disability in excess of objective findings" and there had "been the presence of symptom embellishment on at least some of her physical exams."

4

[¶16] Appellant continued to be treated by specialists at the Utah Pain Clinic through 2002, undergoing more psychological and physical evaluations. Dr. Michael Ashburn diagnosed Appellant with somatoform disorder, generalized pain, sleep disorder, anxiety disorder, depressive disorder, physical deconditioning, and cognitive slowing. Psychiatrist Dr. Richard Shanteau also saw Appellant and concluded that she suffered from major depression and an anxiety disorder with post traumatic stress symptoms, dyssomnia (sleep disorder), and pain disorder associated with both psychological factors and general medical conditions. Dr. Shanteau felt it was "very apparent" that Appellant was gaining very little from the Utah Pain Clinic, and he therefore referred her back to her primary care physician to focus on "anxiety problems."

[¶17] In 2002, Appellant reported back to her primary care physician Dr. Adams, who had treated her since 1997. Throughout the next several years, Dr. Adams treated Appellant for complaints of fibromyalgia[4] symptoms and other ailments including depression, insomnia and anxiety. In January of 2009, Dr. Adams certified Appellant for permanent total disability based upon a diagnosis of fibromyalgia and post-traumatic stress disorder. Appellant then reapplied for PTD benefits.

[¶18] The Division denied PTD benefits in April of 2009, determining that Appellant did not meet the definition of permanent total disability as defined by Wyo. Stat. Ann. § 27-14-102(a)(xvi). She appealed the decision, and the matter was referred to the Wyoming Medical Commission for a contested case hearing.

[¶19] Before the matter went to hearing, the Appellant requested and received an independent medical evaluation by Dr. Joel Dall, a board certified physical medicine and rehabilitation physician, which was ordered in March of 2010. After examining her and comprehensively reviewing her prior medical records, Dr. Dall concluded that Appellant suffers from psychological trauma associated with the 1994 assault. He found that Appellant's "primary disabling condition is a somatoform disorder." He explained that this disorder occurs when psychological factors are converted to physical symptoms on a subconscious level and the patient has no control over the symptoms. According to Dr. Dall, it is a permanent condition. Regarding her physical injuries, Dr. Dall determined that Appellant had a relatively mild sprain and strain to the cervicothoracic and lumbar region, but that those injuries did not render her permanently totally disabled.

[¶20] At the Division's request, Appellant submitted to a prehearing evaluation by Dr. Joel Cohen, a clinical psychologist. He analyzed her condition as follows:

---

[4] "Fibromyalgia is a disorder that causes muscle pain and fatigue." *See* A.D.A.M. Medical Encyclopedia, Fibromyalgia, available at http://www.nlm.nih.gov/medlineplus/fibromyalgia.html. Fibromyalgia causes "tender points" on specific places on the neck, shoulders, back, hips, arms, and legs. *Id.* "People with fibromyalgia may also have other symptoms, such as[:] Trouble sleeping; Morning stiffness; Headaches; Painful menstrual periods; Tingling or numbness in hands and feet; [or] Problems with thinking and memory." *Id.*

> [T]here are several diagnoses that I think are relevant here pertaining to injury. They include pain syndrome associated with a general medical condition as well as psychological factors along with a diagnosis of generalized anxiety disorder with some post-traumatic like symptoms. I would also suggest that there are indications here for recurrent major depression and I would actually suggest that that is, in fact, injury related. However, the most relevant diagnosis in this particular instance, taking into account all of the information gathered thus far and records that have been reviewed, would be somatoform pain disorder, and I do consider that to be a reasonable and appropriate diagnosis in this particular instance.

Dr. Cohen concluded that the cause of Appellant's inability to work is "her self-proclaimed perception of full and total disability, and as long as she holds on to that perception, . . . I do not see how we would ever get her back onto any type of a worksite."

[¶21] A contested case hearing was held before the Medical Commission in November of 2010. Appellant and Dr. Dall testified in person, Drs. Adams and Cohen testified by deposition, and the medical records and reports of Drs. Mooney, Ashburn, and Shanteau were received in evidence. Dr. Dall testified that the primary cause of Appellant's disability is a somatoform pain disorder, which is the same conclusion reached by Drs. Cohen, Mooney, Ashburn and Shanteau. The only conflicting testimony was from Appellant and Dr. Adams, who diagnosed her with fibromyalgia.[5]

[¶22] The Medical Commission issued a clear and cogent 40-page order[6] denying benefits because Appellant did not meet her burden of proving that she is permanently totally disabled under the applicable statute or the odd lot doctrine. Specifically, it found:

> N.    [Appellant's] psychological condition was caused by or related to the work injury.

---

[5] The Medical Commission disagreed with Dr. Adam's opinion that Appellant's physical condition is disabling. It found Dr. Adams to be "acting as an advocate for his patient and may be relying heavily on her history to him . . . which . . . is not credible." As the trier of fact, the Medical Commission was well within its authority "to determine what probative value to assign testimony, and to resolve differences in expert medical opinions." *Stallman v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2013 WY 28, ¶ 40, 297 P.3d 82, 94 (Wyo. 2013).

[6] The Medical Commission's order includes detailed findings of fact and conclusions of law.

O. The overriding diagnoses by the expert providers seen by [Appellant] is that she suffered some physical injury at work. From the evidence there are likely some ongoing physical symptoms, that appear to be soft tissue injuries to her neck and back, possibly some headaches, and mild post concussive syndrome. The fibromyalgia is related by Dr. Adams to her psychological condition. The record is clear, her disabling condition is psychological and has been described by the experts as a somatoform disorder, post traumatic stress, depression, anxiety, and pain syndrome. These diagnosis [sic] are psychological diagnosis and are set out in the most current edition of the Diagnostic and Statistical Manual ("DSM"). Such diagnosis was assigned by medical doctors as well as a licensed psychologist. By definition, these conditions are mental disorders. To claim such are not mental disorders would defy decades of accepted research, governmental agency definitions, researcher's characterizations, and common sense. The overriding diagnosis by health care providers was a somatoform disorder. [Appellant's] own expert, Dr. Dall, opines her physical injuries do not prevent her from working; rather, it is her psychological condition that is disabling. The experts agree that it is her psychological condition that is disabling. Under Wyoming law, a claim for Permanent Total Disability benefits, where the disability is based on a psychological condition, is not compensable.

[¶23] Appellant petitioned the district court for review. After carefully considering the record and applicable law, the district court affirmed, and this appeal followed.

## STANDARD OF REVIEW

[¶24] It is well established that in an appeal from a district court's review of an administrative decision, we review the matter as if it had come directly from the agency, affording no special deference to the district court's decision. *Hayes v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2013 WY 96, ¶ 11, 307 P.3d 843, 846 (Wyo. 2013). An agency's conclusions of law are reviewed de novo, and will only be affirmed if in accordance with the law. *Moss v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2010 WY 66, ¶ 11, 232 P.3d 1, 4 (Wyo. 2010); Wyo. Stat. Ann. § 16-3-114(c)(ii)(A) (LexisNexis 2013). Findings of fact by an agency are reviewed for substantial evidence, meaning "relevant evidence that a reasonable mind might accept as adequate to rationally support the hearing examiner's conclusion." § 16-3-114(c)(ii)(E); *Leavitt v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2013 WY 95, ¶ 32, 307 P.3d 835, 842 (Wyo. 2013).

The arbitrary and capricious standard of review is also cast as a "safety net" to catch agency action "which prejudices a party's substantial rights or which may be contrary to the other review standards under the Administrative Procedure Act, yet is not easily categorized or fit to any one particular standard." *Jacobs v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2013 WY 62, ¶ 9, 301 P.3d 137, 141 (Wyo. 2013).

[¶25] We recognize the Medical Commission's medical expertise in workers' compensation cases which involve complex medical issues. *Stallman v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2013 WY 28, ¶ 28, 297 P.3d 82, 90 (Wyo. 2013). The Medical Commission's function as a fact-finder requires it to parse available medical records and testimony and determine the weight of the available evidence. *Id*. As part of this function, it must determine the credibility of witnesses, but it must apply its fact-finding expertise in a manner that conforms to the governing law. *Id*.

## DISCUSSION

[¶26] Appellant contends that the Medical Commission erred in concluding that she failed to prove entitlement to PTD benefits. She argues that she presented a prima facie case for those benefits under both the Wyoming Workers' Compensation Act and the common law odd lot doctrine. The Division asserts that substantial evidence supports the Medical Commission's ruling that Appellant is not entitled to PTD benefits for her mental condition. We agree with the Division. The Medical Commission's determination that Appellant is not entitled to PTD benefits for her psychological condition is in accordance with the law and supported by substantial evidence.

[¶27] The Wyoming Workers' Compensation Act defines the term "permanent total disability" as "the loss of use of the body as a whole or any permanent injury certified under W.S. 27-14-406, which permanently incapacitates the employee from performing work at any gainful occupation for which he is reasonably suited by experience or training." Wyo. Stat. Ann. § 27-14-102(a)(xvi) (LexisNexis 2013). In turn, "injury" is defined as:

> any harmful change in the human organism other than normal aging and includes damage to or loss of any artificial replacement and death, arising out of and in the course of employment while at work in or about the premises occupied, used or controlled by the employer and incurred while at work in places where the employer's business requires an employee's presence and which subjects the employee to extrahazardous duties incident to the business.

§ 27-14-102(a)(xi). Importantly, however, "injury" does not include:

8

Any mental injury unless it is caused by a compensable physical injury, it occurs subsequent to or simultaneously with, the physical injury and it is established by clear and convincing evidence, which shall include a diagnosis by a licensed psychiatrist or licensed clinical psychologist meeting criteria established in the most recent edition of the diagnostic and statistical manual of mental disorders published by the American Psychiatric Association. In no event shall benefits for a compensable mental injury be paid for more than six (6) months after an injured employee's physical injury has healed to the point that it is not reasonably expected to substantially improve.

§ 27-14-102(a)(xi)(J).

[¶28] The Medical Commission panel correctly relied upon this controlling law. We must therefore decide whether substantial evidence supports its determination that Appellant's disabling condition is only mental and not physical. A thorough review of the record leads us to answer this question in the affirmative; that is, we find that a reasonable mind could accept the relevant evidence as adequate to rationally support the Medical Commission's conclusion. *McIntosh v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2013 WY 135, ¶ 30, 311 P.3d 608, 616 (Wyo. 2013).

[¶29] The majority of the expert evaluators in this case concluded that Appellant's disability is caused by somatoform pain disorder, a purely psychological condition. Dr. Dall explained that such a disorder occurs when "psychological distress is transformed at a subconscious level in the mind to physical complaints. . . . [I]t is emotional, psychological trauma converted to a physical complaint of pain." As one medical authority describes this condition, "[t]he pain is like that of a physical disorder, but no physical cause is found. The pain is thought to be due to psychological problems." A.D.A.M. Medical Encyclopedia, *Somatoform Pain Disorder*, available at http://www. nlm.nih.gov/medlineplus/ency/article/000922. htm. We have similarly explained:

"Somatoform disorder is a relatively new term for what many people used to refer to as psychosomatic disorder." Mark H. Beers et al., *Merck Manual of Medical Information* 601 (2d Home ed.2003).

When people have persistent pain with evidence of psychologic disturbances and without evidence of a disorder that could cause the pain, the pain may be described as psychogenic. Pain that is purely psychogenic is rare. More commonly, the pain has a

9

physical cause, but the doctor's assessment indicates that the degree of pain and the disability experienced are out of proportion to what most people with a similar disorder experience. Sometimes this type of pain is described as a chronic pain syndrome. Psychologic factors often contribute to disability and to an exaggeration of pain complaints. Any kind of pain can be complicated by psychologic factors. Even when pain is suspected to be psychogenic, doctors still investigate whether a physical disorder is contributing to the pain.

The fact that the pain is caused or worsened by psychologic factors does not mean that it is not real. Most people who report pain are really experiencing it, even if a physical cause cannot be identified. Pain complicated by psychologic factors still requires treatment, often by a team that includes a psychologist or psychiatrist.

*Walton v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2007 WY 46, ¶ 25, 153 P.3d 932, 938 (Wyo. 2007).

[¶30] Dr. Dall conducted a thorough evaluation and determined that Appellant's physical condition did not cause her to be disabled, but that she is instead disabled only by a somatoform disorder. When asked by the Medical Commission "if you could remove the somatoform disorder, would there be any physical impairment that would make you think that she could not work?," Dr. Dall answered "No." Dr. Cohen's primary diagnosis was also somatoform disorder, although he also diagnosed generalized anxiety disorder with post-traumatic symptoms and major depression. He also determined Appellant could not work because of her psychological condition. Drs. Mooney, Ashburn and Shanteau all reached the same conclusion.

[¶31] Given these expert evaluations and consistent diagnoses of somatoform pain disorder, the Medical Commission did not err in finding that "[t]he record is clear, [Appellant's] disabling condition is psychological and has been described by the experts as a somatoform disorder, post traumatic stress, depression, anxiety and pain syndrome." It engaged in a detailed analysis of Appellant's condition, including a careful review of the numerous medical assessments, and its findings adequately explain the basis for its decision.

[¶32] We accordingly find that substantial evidence supports the Medical Commission's determination that Appellant's disability is purely psychological and not caused by a

compensable physical injury. Because Appellant's total disability is caused only by a mental injury, the Medical Commission did not err as a matter of law in determining it did not have statutory authority to award PTD benefits under Wyo. Stat. Ann. § 27-14-102(a)(xi)(J). *See Wheeler v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2010 WY 161, ¶ 20, 245 P.3d 811, 817 (Wyo. 2010) (finding mental injuries were not compensable under Wyoming law because "[t]he record contains substantial evidence to support the hearing examiner's conclusion that [the claimant's] PTSD and MDD were mental injuries rather than physical injuries under § 27-14-102(a)(xi)(J)"); *Herrera v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2010 WY 103, ¶ 13, 236 P.3d 277, 281 (Wyo. 2010) ("Section 27-14-102(a)(xi)(J) excludes from coverage any mental injury unless it is caused by a compensable physical injury."). Furthermore, even if Appellant's mental injuries were compensable under Wyo. Stat. Ann. § 27-14-102(a)(xi)(J), our review of the record confirms that substantial evidence supports the conclusion that she reached maximum medical improvement, or ascertainable loss, in 2002. *See Phillips v. TIC-The Indus. Co. of Wyoming, Inc.*, 2005 WY 40, ¶¶ 32-33, 109 P.3d 520, 534 (Wyo. 2005). As a result, Appellant's eligibility for compensation for mental injuries expired six months later at most, well before her 2009 application for PTD benefits concerning her psychological disorder.

[¶33] After reviewing the entire record and giving due regard to the Medical Commission's duty to weigh the evidence and assess the testimony for truthfulness and veracity, we conclude the record contains such relevant evidence as a reasonable mind might accept as adequate to support the finding that Appellant's only disabling condition is psychological. Accordingly, the Medical Commission did not err in denying PTD benefits for Appellant's mental injuries.

[¶34] Appellant also contends that she is entitled to PTD benefits under the odd lot doctrine. However, based upon on our analysis, *supra*, the odd lot doctrine does not apply. We have recently explained:

> The odd lot doctrine is a special rule for determining entitlement to permanent total disability benefits under certain circumstances. It allows permanent total disability benefits for workers who, while not altogether incapacitated for work, are so handicapped that they will not be employed regularly in any well known branch of the labor market. In other words, a claimant who is not actually permanently totally disabled is able to receive permanent total disability benefits because the claimant's disability and other factors make the claimant *de facto* unemployable.

> The odd lot doctrine requires the following burden-shifting approach:

To be entitled to an award of benefits under the odd lot doctrine, an employee must prove: 1) he is no longer capable of performing the job he had at the time of his injury and 2) the degree of his physical impairment coupled with other factors such as his mental capacity, education, training and age make him eligible for PTD benefits even though he is not totally incapacitated. To satisfy this burden, an employee must also demonstrate he made reasonable efforts to find work in his community after reaching maximum medical improvement or, alternatively, that he was so completely disabled by his work-related injury that any effort to find employment would have been futile. If the employee meets his burden, the employer must then prove that light work of a special nature which the employee could perform but which is not generally available in fact is available to the employee.

*McIntosh*, ¶¶ 32-33, 311 P.3d at 616 (quotation marks, citations, and emphasis omitted); *see also Stallman*, ¶¶ 31-32, 297 P.3d at 90-91; *McMasters v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2012 WY 32, ¶¶ 61-65, 271 P.3d 422, 437-38 (Wyo. 2012).

[¶35] The Medical Commission correctly applied our precedent under the odd lot doctrine, and substantial evidence supports its finding that Appellant suffered only from a disabling mental condition. Hence, Appellant did not satisfy the second prong of the odd lot test. This is not a case in which there is physical impairment coupled with other factors that render Appellant incapable of working; rather, there is expert testimony establishing that Appellant is disabled only as the result of a somatoform pain disorder, which is a psychological impairment. *Compare McIntosh*, ¶¶ 32-33, 311 P.3d at 616 with *McMasters,* ¶¶ 60-65, 271 P.3d at 437-38. The Medical Commission therefore did not err in concluding that Appellant is not entitled to benefits under the odd lot doctrine.

## CONCLUSION

[¶36] The Medical Commission reasonably concluded that Appellant did not establish entitlement to PTD benefits under the Wyoming Workers' Compensation Act or the odd lot doctrine, and its conclusions are in accordance with applicable law. Affirmed.