# IN THE SUPREME COURT, STATE OF WYOMING

## 2014 WY 33

### OCTOBER TERM, A.D. 2013

### March 5, 2014

IN THE MATTER OF THE WORKER'S
COMPENSATION CLAIM OF:

BENNIE JOHNSON,

Appellant
(Petitioner),

v.                                                                S-13-0115

STATE OF WYOMING, ex rel.,
WYOMING WORKERS' SAFETY AND
COMPENSATION DIVISION,

Appellee
(Respondent).

*Appeal from the District Court of Sweetwater County*
The Honorable Nena James, Judge

*Representing Appellant:*
    Donna D. Domonkos, Cheyenne, Wyoming.

*Representing Appellee:*
    Peter K. Michael, Wyoming Attorney General; John D. Rossetti, Deputy Attorney
    General; Michael J. Finn, Senior Assistant Attorney General; Peter Howard, Legal
    Intern.

*Before KITE, C.J., and HILL, VOIGT\*, BURKE, and DAVIS, JJ.*

*\* Justice Voigt retired effective January 3, 2014.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**KITE, Chief Justice.**

[¶1]   The State of Wyoming ex rel. Wyoming Workers' Safety and Compensation Division (the Division) denied Bennie Johnson's requests for preauthorization of bilateral total knee replacements and payment of other medical bills associated with his knees on the grounds the current condition of his knees was not related to a 1992 work injury.  The Medical Commission held a contested case hearing and upheld the Division's decision.  During the hearing it admitted into evidence, over Mr. Johnson's objection, three exhibits.  We conclude the Medical Commission did not commit prejudicial error by admitting the exhibits and substantial evidence supports its decision.  We, therefore, affirm.

## ISSUES

[¶2]   Mr. Johnson presents the following issues for this Court's consideration:

> **ISSUE I**
>
> Whether the Commission acted arbitrarily, capriciously or otherwise not in accordance with the law when it admitted into evidence unreliable and irrelevant evidence over objection.
>
> **ISSUE II**
>
> Whether the [Medical Commission's] decision is supported by substantial evidence.

The Division presents the same issues, although they are phrased differently.

## FACTS

[¶3]   Mr. Johnson has a long and complicated history of knee problems.  On October 9, 1986, Mr. Johnson filed an injury report stating that a day earlier he fell ten feet while working as a pipe welder and injured his left shoulder.  It did not indicate that he injured his knees, and he did not receive any worker's compensation benefits for his knees.

[¶4]   Several years later, while still working as a welder, Mr. Johnson was seen by orthopedic surgeon Christian Guier, M.D. with complaints of bilateral knee pain.  On the intake questionnaire dated September 23, 1992, he stated that he had "bad knees" after falling thirty feet in 1985(sic).  Dr. Guier diagnosed him as suffering from bilateral patellar tendonitis and chondromalacia and stated he could not rule out mild

1

medial/lateral meniscopathy in both knees.[1]  Mr. Johnson sought worker's compensation benefits, and the Division concluded the time of the injury was "September 23, 1992" and "the injury appear[ed] to be work related."

[¶5]    Dr. Guier performed surgery on both knees in December 1992, including bilateral "arthroscopy and chondral debridement for chondromalacia patellae" and "partial synovectomy."[2]    Although Mr. Johnson returned to work shortly after the surgeries, within a few months he was again suffering from pain in both knees.  Dr. Guier performed a second bilateral knee operation in May 1993.  Approximately one week after the surgeries, Dr. Guier stated that he felt Mr. Johnson would "be permanently disabled from this injury and should seek another line of employment.  A referral to Vocational Rehabilitation would be appropriate at this time."  Mr. Johnson apparently remained off work for the next several months, and Dr. Guier continued to suggest he find a new means of earning a living.  Mr. Johnson's knees, particularly the left, continued to bother him, and on December 9, 1993, Dr. Guier performed a third arthroscopy and chondral debridement of Mr. Johnson's left knee.

[¶6]    On December 23, 1993 (approximately two weeks after the left knee surgery), Mr. Johnson's right leg and knee were seriously injured when he was struck by a vehicle while walking.  He was diagnosed with "comminuted right knee lateral tibial plateau fracture with disruption of the anterior cruciate ligament insertion of the lateral meniscus," and Dr. Guier performed surgery the next day.

[¶7]    Mr. Johnson received temporary total disability (TTD) benefits until the end of April 1995, when he accepted permanent partial disability benefits for both knees.  He also received a vocational (loss of earning capacity) award to assist him in retraining for another occupation.  He apparently used the award to start a fly fishing business sometime in 1995.

[¶8]    Even though he changed professions, Mr. Johnson continued to suffer from knee problems. He reinjured his right knee while fishing on December 27, 1995, and underwent additional surgeries on his right leg/knee in 1995 and 1996.  The Division denied his request for worker's compensation benefits for the 1996 surgery, and a Medical Commission panel upheld the denial, finding the surgery resulted from the pedestrian/car accident rather than his work injury.

---

[1] Dr. Guier described chondromalacia as an abnormality or pathology of the cartilage.  Tendonitis is inflammation of a tendon, and the meniscus is a disk of cartilage in a joint.  American Heritage Stedman's Medical Dictionary (2002).

[2] Debridement is the surgical removal of foreign matter and contaminated tissue from a wound, and synovectomy is the removal of all or part of the synovial membrane of a joint.  American Heritage Stedman's Medical Dictionary (2002).

[¶9] Mr. Johnson fell on April 11, 1997, injuring both knees and again on April 15, 1997, landing on a rock with his right knee. In 1998, Mr. Johnson received injections in his knees to relieve the pain. He underwent bilateral knee surgeries on November 3, 1998, and Dr. Guier stated the "majority" of Mr. Johnson's problems with both knees related to the work injury. Mr. Johnson fell and injured his right knee again in 1999 and underwent additional injections and another surgery on his right knee in 2000.

[¶10] During the 2000s, Mr. Johnson had carpel tunnel release surgery and was treated for knee, back, shoulder and neck problems. Over the lengthy term of his medical treatment, Mr. Johnson took a great deal of pain medication and his doctors expressed concern over his pain medication use. In 2003, Mr. Johnson was seen by a pain specialist, Tuenis Zondag, M.D., who noted he "lives with pain 24/7 and has multiple areas with problems."

[¶11] Despite his pain, Mr. Johnson worked in his fly fishing business and also returned to welding in the mid 2000s. Finally, in 2009, Dr. Guier and Mr. Johnson requested preauthorization from the Division to perform total knee replacement on both knees. The Division issued final determinations denying both requests and also denying payment of continued treatment of his knees by Dr. Zondag. The Division concluded the treatment and total knee replacements were not associated with the 1992 work injury. Mr. Johnson objected and the matters were consolidated for hearing. The Medical Commission issued its decision on February 1, 2011, upholding the denial of benefits. Mr. Johnson filed a petition for review with the district court, and the district court affirmed. He then filed a timely notice of appeal to this Court.

## STANDARD OF REVIEW

[¶12] Judicial review of an agency's decision is governed by Wyo. Stat. Ann. § 16-3-114(c) (LexisNexis 2013):

> (c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:
>
> (i) Compel agency action unlawfully withheld or unreasonably delayed; and
>
> (ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

3

> (A)   Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;
> (B)   Contrary to constitutional right, power, privilege or immunity;
> (C)   In excess of statutory jurisdiction, authority or limitations or lacking statutory right;
> (D)   Without observance of procedure required by law; or
> (E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

In accordance with § 16-3-114(c), we review the agency's findings of fact by applying the substantial evidence standard. *Dale v. S & S Builders, LLC,* 2008 WY 84, ¶ 22, 188 P.3d 554, 561 (Wyo. 2008)*.* Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Bush v. State ex rel. Wyo. Workers' Comp. Div.,* 2005 WY 120, ¶ 5, 120 P.3d 176, 179 (Wyo. 2005) (citations omitted). Findings of fact are supported by substantial evidence if, from the evidence preserved in the record, we can discern a rational premise for the findings. *Id.*

[¶13]  With regard to an agency determination that the claimant did not satisfy his burden of proof, we have said:

> If the hearing examiner determines that the burdened party failed to meet his burden of proof, we will decide whether there is substantial evidence to support the agency's decision to reject the evidence offered by the burdened party by considering whether that conclusion was contrary to the overwhelming weight of the evidence in the record as a whole. *See*, *Wyo. Consumer Group v. Public Serv. Comm'n of Wyo.*, 882 P.2d 858, 860-61 (Wyo. 1994); *Spiegel*, 549 P.2d at 1178 (discussing the definition of substantial evidence as "contrary to the overwhelming weight of the evidence"). If, in the course of its decision making process, the agency disregards certain evidence and explains its reasons for doing so based upon determinations of credibility or other factors contained in the record, its decision will be sustainable under the substantial evidence test. Importantly, our review of any particular decision turns not on whether we agree with the outcome, but on whether the agency could reasonably conclude as it did, based on all the evidence before it.

*Dale,* ¶ 22, 188 P.3d at 561.

[¶14] The agency has discretion in ruling on the admissibility of evidence and we do not interfere unless it abused its discretion. *Greene v. State ex rel. Wyo. Board of Chiropractic Examiners,* 2009 WY 42, ¶ 9, 204 P.3d 285, 290 (Wyo. 2009). Discretion generally means "sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously. An abuse of discretion [is] said to have occurred only when the decision shocks the conscience of the court and appears to be so unfair and inequitable that a reasonable person could not abide it." *Airtouch Comm. Inc. v. Dep't of Revenue,* 2003 WY 114, ¶ 55, 76 P.3d 342, 361 (Wyo. 2003), quoting *Sinclair Oil Corp. v. Wyo. Public Service Comm'n,* 2003 WY 22, ¶ 41, 63 P.3d 887, 901 (Wyo. 2003) (other citations omitted). *See also Clark v. State ex rel. Wyo. Workers' Safety & Comp. Div.,* 968 P.2d 436, 439 (Wyo. 1998).

[¶15] Even if an agency errs in ruling on an evidentiary issue, we must consider whether its overall decision was arbitrary and capricious, i.e., whether it prejudiced a party's substantial rights, warranting reversal. *Greene*, ¶ 11, 204 P.3d at 290. We review an agency's conclusions of law *de novo* and will affirm if the agency's conclusions are in accordance with the law. *Moss v. State ex rel. Wyo. Workers' Comp. Div.,* 2010 WY 66, ¶ 11, 232 P.3d 1, 4 (Wyo. 2010).

## DISCUSSION

### 1. *Admission of Evidence*

[¶16] Mr. Johnson challenges the Medical Commission's admission of three exhibits into evidence over his objection. He claims the exhibits were not admissible because they were irrelevant and unreliable. Wyo. Stat. Ann. § 16-3-108(a) (LexisNexis 2013) addresses evidence in contested cases:

> In contested cases irrelevant, immaterial or unduly repetitious evidence shall be excluded and no sanction shall be imposed or order issued except upon consideration of the whole record or such portion thereof as may be cited by any party and unless supported by the type of evidence commonly relied upon by reasonably prudent men in the conduct of their serious affairs.

[¶17] At the beginning of the contested case hearing, the Medical Commission's hearing officer addressed the parties' proposed exhibits. Mr. Johnson's attorney objected to three of the Division's exhibits as irrelevant and unreliable: 1) a 1997 certificate of lien for sales tax due to the State of Wyoming from Bennie C. Johnson, dba Highland Desert

Flies; 2) the first page of a 2005 civil complaint in which Mr. Johnson, doing business as Bennie's Welding and Fabrication, was named as a defendant in a breach of contract and slander case; and 3) an anonymous letter to the Division claiming that Mr. Johnson was taking advantage of the worker's compensation system. The State responded that the exhibits were offered for the following reasons: "[T]he first two, go to credibility and also to work history. The last exhibit . . . was received by the Division and became part of the Division file. And to the extent for what it's worth, it's submitted for that purpose." The hearing officer stated the exhibits were of "questionable relevance or persuasive value." Nevertheless, he admitted all three, stating that he would "allow the medical hearing panel to determine what particular weight, if any, is associated with those particular exhibits." The exhibits were never mentioned again, either by the parties at the hearing or in the Medical Commission's decision.

[¶18] The first two exhibits pertained to Mr. Johnson's work history. The sales tax lien was directed toward Mr. Johnson's fly fishing business and showed that he was involved in that business in 1997. The civil complaint confirmed that Mr. Johnson was engaged in a welding business in 2005. In fact, Mr. Johnson testified that he worked as a fishing guide in 1997, and he later worked in his own welding business. Mr. Johnson's work history was, undoubtedly, relevant in determining what caused his knee problems and whether they were work related. The admission of the exhibits to establish his work history was, therefore, reasonable.[3]

[¶19] On the other hand, the Division did not demonstrate the anonymous letter is the type of evidence a reasonable person would rely upon in conducting his serious affairs. Compare, *Gray v. State ex rel. Wyo. Workers' Safety & Comp. Div.,* 2008 WY 115, ¶ 15, 193 P.3d 246, 251 (Wyo. 2008), stating that while it may not have been error to admit an anonymous statement into evidence at an agency hearing, it could not, alone, provide the basis for a reasonable decision. No witness was questioned about the letter and the only rationale given for its admission was that it was part of the Division file. Without more justification as to the letter's admissibility, the agency erred when it allowed it into evidence.

[¶20] Nevertheless, the error is not reversible unless it prejudiced Mr. Johnson, resulting in an arbitrary and capricious decision. *See Greene,* ¶ 11, 204 P.3d at 290. In resolving the compensability issue, the Medical Commission primarily focused on the medical evidence. The letter was not part of that evidence, and the Medical Commission did not even mention the letter in its decision. In *Walton v. State ex rel. Wyo. Workers' Safety & Comp. Div.,* 2007 WY 46, ¶ 37, 153 P.3d 932, 940-41 (Wyo. 2007), we stated that it was improper for the Medical Commission to conduct its own neurological examination of the

---

[3] With regard to the Division's assertion that the exhibits were admissible on the issue of Mr. Johnson's credibility, it is difficult to understand how either of the exhibits would have proven or disproven that he was credible. As we stated earlier, the exhibits were not discussed at the hearing so there was no context for them.

claimant at the hearing, but, given there was no indication it relied on the examination in reaching its decision, reversal was not required. Here, too, the error was harmless and reversal is not warranted. *See Grams v. Environmental Quality Council,* 730 P.2d 784, 787 (Wyo. 1986).

### 2. Causation

[¶21] The Medical Commission concluded Mr. Johnson failed to prove his need for bilateral knee replacement and continued treatment of his knees was related to the 1992 injury. A worker's compensation claimant has the burden of proving each of the essential elements of his claim by a preponderance of the evidence. *Kenyon v. State ex rel. Wyo. Workers' Safety & Comp. Div.,* 2011 WY 14, ¶ 22, 247 P.3d 845, 851 (Wyo. 2011). "As a part of that burden, the claimant must prove a causal connection exists between a work-related injury and the injury for which worker's compensation benefits are being sought." *Dale,* ¶ 35, 188 P.3d at 563. The requirement of a causal connection is included in the statutory definition of injury in Wyo. Stat. Ann. § 27-14-102(a)(xi) (LexisNexis 2012):

> (xi) "Injury" means any harmful change in the human organism other than normal aging and includes damage to or loss of any artificial replacement and death, arising out of and in the course of employment while at work in or about the premises occupied, used or controlled by the employer and incurred while at work in places where the employer's business requires an employee's presence and which subjects the employee to extrahazardous duties incident to the business.

*See also Huntington v. State ex rel. Wyo. Workers' Safety & Comp. Div.,* 2007 WY 124, ¶ 10, 163 P.3d 839, 842 (Wyo. 2007). Thus, to satisfy the causation element, Mr. Johnson was required to show a nexus between the condition for which benefits were sought and an activity at work. *Id.* Physical conditions associated with the normal aging process are specifically excluded from the definition of injury. Section 27-14-102(a)(xi).

[¶22] Mr. Johnson presents two arguments challenging the Medical Commission's decision that he did not meet his burden of proving the 1992 work injury necessitated bilateral knee replacements.[4] First, he claims the commission incorrectly ruled in Finding of Fact No. 3 that the 1992 injury to his knees was a single injury rather than a cumulative trauma. Finding of Fact No. 3 states in pertinent part:

---

[4] Although it may be applicable, Mr. Johnson does not address the "second compensable injury" rule. This distinction is not important, however, because the ultimate question is whether his current treatment was causally connected to the original injury. *See Hoffman v. State ex rel. Wyo. Workers' Safety & Comp. Div.,* 2012 WY 164, ¶ 9, 291 P.3d 297, 301-02 (Wyo. 2012).

Shortly after receiving Dr. Guier's letter the Division issued a letter dated January 26, 1993, which found that Mr. Johnson had sustained an injury while he was an employee of TIC The Industrial Company, Wyoming, Inc., (also referred to as "TIC"), out of Casper, Wyoming, on September 23, 1992. The Final Determination letter in question, submitted as Employee/Claimant's Exhibit EC 14-1, is silent on the issue of "cumulative trauma injury", but rather clearly indicates that the date of the injury was to be considered as September 23, 1992, which is the date of the first medical visit Mr. Johnson had with Dr. Guier.

[¶23] Throughout the proceedings in this case, Mr. Johnson referred to the 1992 injury as a "cumulative trauma" injury, presumably meaning an injury which occurs over a substantial period of time under Wyo. Stat. Ann. § 27-14-603(a) (LexisNexis 1991):

(a) The burden of proof in contested cases involving injuries which occur over a substantial period of time is on the employee to prove by competent medical authority that his claim arose out of and in the course of his employment and to prove by a preponderance of evidence that:
(i) There is a direct causal connection between the condition or circumstances under which the work is performed and the injury;
(ii) The injury can be seen to have followed as a natural incident of the work as a result of the employment;
(iii) The injury can fairly be traced to the employment as a proximate cause;
(iv) The injury does not come from a hazard to which employees would have been equally exposed outside of the employment; and
(v) The injury is incidental to the character of the business and not independent of the relation of employer and employee.

[¶24] Dr. Guier's letter to the Division which was referenced in Finding of Fact No. 3 was dated January 5, 1993. In that letter, Dr. Guier did not mention Mr. Johnson's earlier fall but, instead, stated: "Bennie's injuries to both knees were secondary to chronic stress placed on the knees from long-term use in his occupation and kneeling on his knees." As the Medical Commission pointed out in Finding of Fact No. 3, the Division did not describe the injury as "cumulative" or one occurring over a substantial period of time in its 1993 initial review allowing coverage. That factual finding does not, however,

8

represent the Medical Commission's ultimate conclusion. Instead, the Medical Commission's decision repeatedly refers to Mr. Johnson's 1992 injury as involving cumulative trauma. In fact, the commission concluded that Mr. Johnson's 1992 injury necessarily included "all prior knee injury pathology." The Medical Commission's decision correctly described the nature of the injury as reflected in the record.

[¶25] Mr. Johnson's second challenge to the Medical Commission's decision is that it erred by rejecting Dr. Guier's opinion that his need for bilateral total knee replacements related to the 1992 compensable injury. The Medical Commission has special medical expertise in worker's compensation cases involving complex medical issues. *Hathaway v. State ex rel. Wyo. Workers' Safety & Comp. Div.,* 2014 WY 12, ¶ 25, 317 P.3d 590, 596 (Wyo. 2014), citing *Stallman v. State ex rel. Wyo. Workers' Safety & Comp. Div.,* 2013 WY 28, ¶ 28, 297 P.3d 82, 90 (Wyo. 2013). As the fact-finder in a contested case hearing, the Medical Commission must parse available medical records and testimony and determine the weight of the available evidence. *Id.* This includes weighing of expert medical opinions. The agency "'is entitled to disregard an expert opinion if [it] finds the opinion unreasonable, not adequately supported by the facts upon which the opinion is based, or based upon an incomplete and inaccurate medical history provided by the claimant.'" *Watkins v. State ex rel. Wyo. Workers' Safety & Comp. Div.,* 2011 WY 49, ¶ 25, 250 P.3d 1082, 1090-91 (Wyo. 2011), quoting *Taylor v. State ex rel. Wyo. Workers' Safety & Comp. Div.,* 2005 WY 148, ¶ 15, 123 P.3d 143, 148 (Wyo. 2005).

[¶26] Dr. Guier was Mr. Johnson's orthopedic specialist for many years. His records were admitted into evidence and he was deposed several times over the years. The most recent deposition of Dr. Guier occurred in 2010 as part of the contested case proceeding at issue here. Dr. Guier stated that he started seeing Mr. Johnson in 1992 and explained the nature of his initial complaints as:

> "[H]e was a 35 year old male who ha[d] a long standing history of pain in both of his knees, that he had fallen approximately 30 feet onto the front of his knees in 1985, and that he had been treated conservatively and that he had noted some weakness and giving way of his legs, but no catching or locking."

Dr. Guier diagnosed Mr. Johnson's knee problems as: "chondromalacia [abnormality in the cartilage] in both patellofemoral joints as well as patellar tendinitis." Although he focused primarily on Mr. Johnson's right knee, he suggested that the 1992 work injury had caused the condition which required both of Mr. Johnson's knees to be replaced.

[¶27] The Medical Commission rejected Dr. Guier's opinion on causation because it was inconsistent with testimony he had given in 1999, in which he relied heavily upon a "fall" that occurred in 1992, when no such fall had taken place. The Medical Commission

pointed out that Mr. Johnson's fall had actually occurred in 1986, and he had only reported an injury to his shoulder, not to his knees. Dr. Guier's 1999 testimony concerning the onset of Mr. Johnson's knee problems was different than his testimony in 2010:

> Bennie's occupation at the time that I first saw him was as a welder, and he described the job to me as a job that required him to get into a stooped and squatted and sometimes a kneeling position, awkward position, to get into these pipes to weld them. And then he apparently fell 30 feet is what my records show directly onto both knees.

So, in 1999, Dr. Guier believed that Mr. Johnson had stressed his knees while welding and then had fallen shortly before his first appointment in 1992.

[¶28] By the time Dr. Guier's deposition was taken in 2010, Mr. Johnson had informed the doctor that his understanding of the history of his knees problems was mistaken, i.e. that the fall had occurred several years before his first appointment. Consequently, Dr. Guier testified in 2010, that Mr. Johnson had fallen in 1986, which caused the initial damage to his knees and he then further stressed the joints while welding. Under both scenarios, Dr. Guier opined, Mr. Johnson's work activities caused his degenerative knee problems. Because of Dr. Guier's incomplete and shifting understanding of the nature of Mr. Johnson's injury, the Medical Commission concluded that it could not rely on Dr. Guier's opinion as to causation. Given the inconsistencies in Dr. Guier's testimony, it was reasonable for the Medical Commission to discount his opinion. In accordance with our standard of review, when an agency explains its reasons for disregarding certain evidence based upon factors contained in the record, its decision will be sustainable under the substantial evidence test. *Dale,* ¶ 22, 188 P.3d at 561.

[¶29] The inconsistencies in Dr. Guier's explanation of Mr. Johnson's injury were not the only grounds for the Medical Commission's decision to disregard Dr. Guier's testimony and conclude that Mr. Johnson had not met his burden of proof. The commission stated that the initial surgery performed by Dr. Guier in 1992 was a simple "clean up" procedure involving a bilateral knee arthroscopy and chondral debridement for the chondromalacia patellae and a partial synovectomy. It noted that he was released within a few weeks to resume his normal activities. After that, he continued to suffer from pain and Dr. Guier recommended he quit the welding profession, which he did. The Medical Commission found:

> [O]nce Mr. Johnson was removed from the welding profession, which had caused the 'cumulative trauma injury' to his knees, his knees returned to a baseline level of function, and subsequent pathology was caused by ongoing falls,

10

normal aging and continued degeneration of the knees, exacerbated by his obesity, and the serious pedestrian/motor vehicle accident."

The agency further ruled:

> This Panel finds and concludes that the original 1992 "cumulative trauma injury" was minor in nature, and is a common condition seen in an aging population that is treated by simple arthroscopic surgical procedures, and in and of itself does not lead to a total knee replacement procedure. Mr. Johnson has failed to provide credible evidence that the need for bilateral total knee replacements and ongoing medical care to his knees is directly or causally related to the 1992 "cumulative trauma injury", and the same are therefore found to be non-compensable.

[¶30] The Medical Commission's rulings are supported by the record. Mr. Johnson's right knee was seriously injured in 1993 in a pedestrian/motor vehicle accident. Although Dr. Guier stated the accident did not precipitate Mr. Johnson's need for replacement of his right knee, several independent medical examinations performed after the accident indicated otherwise. In addition, a different panel of the Medical Commission ruled in 1997 that the condition of his right knee at that time was not due to the 1992 cumulative trauma injury, but was caused by the pedestrian/motor vehicle accident. Based upon this evidence, the Medical Commission stated in the current action: "This Panel . . . finds that these advanced degenerative changes in the **right** knee are entirely consistent with the damage sustained in the pedestrian/motor vehicle accident, and are the cause of the need of the total right knee replacement procedure." (emphasis in original). Substantial evidence supports this finding.

[¶31] Without providing many details, Dr. Guier also suggested that Mr. Johnson needed a left knee replacement because of the 1992 injury. Addressing the left knee, the Medical Commission stated that an MRI study completed on November 9, 2009, showed Mr. Johnson's current left knee problem was different from the problem he had in 1992. The commission stated:

> [T]hese degenerative conditions are primarily noted on components of the left knee that were not the primary components of the 1992 'cumulative trauma injury', which consisted of damage under the patella and chondromalacia, with a small meniscal tear that was repaired in May of 199[3]. The current findings are consistent with a knee that has simply degenerated with the passage of time, prompted by

11

new falls and stumbles in his new profession, and general living and overall aging, which are exacerbated and accelerated by his obesity.

The MRI report supports the Medical Commission's conclusion.

[¶32] Dr. Guier also did not adequately explain the effect of other factors on Mr. Johnson's knee condition. In particular, the doctor did not thoroughly discuss the ramifications of several falls in the late 1990s and 2000s. In *Huntington,* ¶ 13, 163 P.3d at 844, we noted that the agency is entitled to disregard a medical opinion when the doctor failed to account for intervening injuries. In addition, Mr. Johnson was obese and the medical witnesses, including Dr. Guier, stated that extra body weight contributes to knee problems.

[¶33] To recap, the knee injuries Dr. Guier saw Mr. Johnson for in 1992 were relatively minor. Mr. Johnson underwent a simple surgical procedure to "clean up" the cartilage under his knee caps, and was released to return to work shortly thereafter. Mr. Johnson's right knee was severely injured in 1993 when he was hit by a car. Following Dr. Guier's recommendation, Mr. Johnson quit welding and started a fly fishing business. However, he fell several times while walking along the river, resulting in medical treatment for his knees. For several years in the 2000s Mr. Johnson did not see Dr. Guier, but instead saw pain specialist, Dr. Zondag, who treated him for various areas of pain. Finally in 2009, seventeen years after his initial injury, Dr. Guier requested preauthorization from the Division to perform total knee replacements on both knees. Although Dr. Guier asserted Mr. Johnson's knees needed to be replaced because of the 1992 work injury, his understanding of the timing and nature of Mr. Johnson's injuries shifted over time and he failed to explain how the relatively minor cartilage condition led to the need for total knee replacements. In addition, Dr. Guier's opinions did not sufficiently eliminate the intervening accidents, general aging and/or obesity as the cause of Mr. Johnson's need for bilateral total knee replacements.

[¶34] Mr. Johnson's lengthy and complicated history of knee problems made understanding the cause of the condition necessitating his total knee replacements difficult. The Medical Commission's expertise in understanding the medical issues is entitled to respect. *Hoffman,* ¶ 23, 291 P.3d at 305; *Stallman,* ¶ 28, 297 P.3d at 90. Its decision to disregard Dr. Guier's testimony and conclude that Mr. Johnson had not met his burden of proof was not against the overwhelming weight of the evidence. The Medical Commission's decision to reject the evidence offered by Mr. Johnson is, therefore, supported by substantial evidence.

[¶35] Affirmed.

12