# IN THE SUPREME COURT, STATE OF WYOMING

## 2016 WY 80

APRIL TERM, A.D. 2016

_August 16, 2016_

IN THE MATTER OF THE WORKER'S
COMPENSATION CLAIM OF:

WILLIAM H. ROGERS,

Appellant
(Petitioner/Claimant),

v.                                                              S-15-0297

RUSSELL CONSTRUCTION
COMPANY, INC.,

Appellee
(Respondent/Employer).

_Appeal from the District Court of Converse County_
_The Honorable John C. Brooks, Judge_

*Representing Appellant:*
> Jeremy J. Hugus, Platte River Law Firm, Casper, Wyoming

*Representing Appellee:*
> Denny Harts, Attorney at Law, Douglas, Wyoming

*Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**DAVIS**, Justice.

[¶1]   William Rogers appeals from a district court order affirming the Office of Administrative Hearing's (OAH) denial of his claim for worker's compensation benefits. We affirm.

## ISSUES

[¶2]   Rogers raises two issues relating to the OAH decision.   We restate them as follows:

> 1.  Was the hearing examiner's determination that Rogers failed to prove a compensable workplace injury supported by substantial evidence, and if so, was it nonetheless arbitrary and capricious?
>
> 2.  Was the hearing examiner's determination that Rogers failed to prove that the late filing of his report of injury did not prejudice his employer or the Workers' Compensation Division (Division) supported by substantial evidence, and if so, was it nonetheless arbitrary and capricious?

Because of our resolution of the first issue, we need not reach the second.[1]

## FACTS

[¶3]   On November 19, 2013, Rogers was working at the Dave Johnson Power Plant near Glenrock for Russell Construction Company (Russell), along with his supervisor Blake Palmer and another worker, George Emery.[2]   The three men were pouring and finishing concrete in a footer form that was sixteen inches wide and eight to twelve inches deep, with vertical rebar dowels sticking up in its center.  The form was in a trench that was two and a half to three feet deep.  Palmer was guiding the chute of the concrete mixer truck while Rogers and Emery worked to level and finish the poured concrete. Approximately fifteen feet from a ninety degree turn in the form, and just past a point where several pipes or conduits crossed the trench, the chute momentarily caught on a piece of wire attached to the rebar and then popped up with some force.

---

[1] Wyo. Stat. Ann. § 27-14-502 (LexisNexis 2015) creates a presumption that a claim will be denied if the report of injury is not timely filed, and it permits rebuttal of that presumption by a showing of a lack of prejudice by clear and convincing evidence.  The district court did not rule on the hearing officer's disposition of those questions.

[2] Rogers claimed in his Report of Injury that the events occurred on December 2, 2013, but testimony and documents introduced at the contested case hearing drew his concession that November 19 was likely the correct date.

1

[¶4]    Rogers claimed that when it sprang up, the chute came close to his head, startled him, and caused him to step back.  He testified that when he did so, he tripped and fell backward against a ledge of old concrete protruding from the side of the trench.  He also claimed that Palmer was facing him, and he was so close he must have seen the fall, and that Palmer in fact asked him if he was all right after he stood up.

[¶5]    However, Palmer and Emery testified that Rogers was farther away from the chute, at the corner of the trench, and separated from it by conduit.  Both testified that they did not see Rogers fall, despite their proximity to where Rogers claimed to have been injured.  Furthermore, they testified that he did not mention that he had fallen during the pour.  Rogers continued to work that day and afterward, and he did not seek medical attention for nearly a month.

[¶6]    On December 18, 2013, he spent most of the day knocking down a portion of a cement block wall with a hammer drill.[3]  He felt unusually stiff and sore at the end of the day, and he therefore visited the emergency room at the Memorial Hospital of Converse County.

[¶7]    A report concerning diagnostic x-rays of Rogers' spine taken during that visit revealed that he had undergone some kind of previous lumbar spine study at that facility in early 2009.[4]  A radiologist who reviewed the films found no fractures, but he did observe partial sacralization of the fifth lumbar and first sacral vertebrae.  The report reflected an essentially fused disc space at that level, as well as minimal spondylolisthesis at the fourth and fifth lumbar vertebrae, which reduced the disc space somewhat.[5]  The report noted no instability on flexion and extension.  Rogers was diagnosed as suffering from muscle strain in his lower back, given some medication, and sent home with worker's compensation paperwork.

[¶8]    Rogers testified that he filled out that paperwork, took it to Russell's office manager the next day, and advised her that the doctor said he should not return to work until the pain went away or another doctor released him for work.[6]  Two days later, he drove to Oklahoma for the Christmas holiday, planning to stay there for the two to three

---

[3] Rogers reported he had been using a jackhammer, but Palmer and Emery identified the tool used and indicated that Russell did no jackhammer work on that job.

[4] Rogers testified that he was treated at the facility for back pain on the date of the prior films, February 28, 2009.

[5] Sacralization is the harmless congenital fusion of the lowest lumbar vertebra to the top of the sacrum. *Collins Dictionary of Medicine* (2004, 2005), retrieved Aug. 20, 2016, from http://medical-dictionary.thefreedictionary.com/sacralization.  Spondylolisthesis is the forward displacement of a vertebra relative to the one under it, usually due to congenital weakness of the bony arch in the lower vertebra which bears facets of the upper vertebra. *Collins Dictionary of Medicine* (2004, 2005), retrieved Aug. 20, 2016, from http://medical-dictionary.thefreedictionary.com/spondylolisthesis.

[6] The medical records we have do not actually reflect this advice.

weeks he said the Converse County emergency physician said it would likely take for his back to feel better.

[¶9]   He later decided to see an Oklahoma physician, and he contacted a Wyoming attorney for advice as to how to assure that his medical expenses would be covered by the Division.  He was advised to file what he called "another" Report of Injury.[7]  He did so on approximately January 21, 2014, and in that document he claimed he had suffered a first-time injury to his lumbar spine after falling on his back while pouring concrete.

[¶10]  On February 4 and February 25, 2014, advanced practice registered nurse/certified nurse practitioner (CNP) Bronwyn Howard examined Rogers in Oklahoma.[8]  She initially diagnosed him as suffering from a lumbar strain or sprain, and prescribed medications to relieve pain and spasm.  She also ordered an MRI, a considerably more sophisticated study than the plain film x-rays Rogers previously had.  The radiology report of that study reflected possible spinal changes due to mild degenerative narrowing of the spinal canal and nerve exit points due to mild disc bulging and facet enlargement between the fourth and fifth lumbar vertebrae.  It also indicated that the radiologist saw mild disc shrinkage and facet enlargement between the fifth lumbar and first sacral vertebrae.  Howard therefore referred Rogers to a Tulsa neurologist for evaluation.[9]  She also notified the Division that he would have to severely limit his activity and that he was therefore temporarily disabled.

[¶11]  On February 21, 2014, the Division issued a determination that Rogers had suffered a compensable injury.  Russell objected to that determination, restating its previous response that the claim was fraudulent.  The Division referred the case to the OAH for a hearing, which was held on January 7, 2015.

[¶12]  Only Rogers, Palmer, and Emery testified at the hearing, and no deposition testimony of medical professionals was offered.  However, several exhibits, including some medical records, were admitted.  Russell argued that Rogers had not shown his back problems were caused by a workplace incident, and that the evidence showed they were instead the result of a preexisting degenerative spinal condition.

---

[7] The Division's letter to Rogers on January 31, 2014, indicates this was the only such report it had received.  The Division noted that no Report of Injury had been submitted to it within the 10-day time limit of Wyo. Stat. Ann. § 27-14-502(a).  That provision requires the employee to file that report with both the employer and the Division.  Moreover, various communications from Russell to the Division indicated that Rogers had not reported any injury to the company prior to January 21, and that they had not heard from him between December 20, 2013 and February 4, 2014.

[8] Nowhere does the record suggest that Howard enjoyed the benefit of access to any materials relating to Rogers' earlier examination in Converse County.  A letter written shortly before the hearing in this case indicated that she had treated Rogers for two years, and our record obviously does not contain a complete set of her records if that is the case.

[9] The record is silent as to whether Roger ever saw the neurologist.

3

[¶13] The hearing examiner ultimately agreed in a detailed 43-page "Findings of Fact, Conclusions of Law, and Order" dated February 25, 2015. He noted many conflicts and deficiencies in the testimony presented at the hearing, as well as the absence of medical evidence to establish how the alleged workplace incident could have caused the injury Rogers claimed. He concluded that Rogers had not proved that he suffered a compensable injury on either November 19 or December 2, 2013, and consequently denied benefits. He also found that Rogers failed to timely file a report of injury, and that he failed to prove a lack of prejudice from doing so.

[¶14] Rogers then petitioned for judicial review of that decision, and the district court affirmed. This appeal followed.

## DISCUSSION

[¶15] In appeals from a district court's review of an administrative decision, this Court examines the case as if it had come to us directly from the agency. We review conclusions of law *de novo*, but apply the substantial evidence standard to an agency's findings of fact. That is, we determine whether evidence in the record provides a rational basis for those finding. We defer to the agency's determinations as to the credibility of witnesses and whether the claimant carried his burden of proof, unless those determinations are clearly contrary to the overwhelming weight of the evidence. Finally, as a safety net, we employ the arbitrary and capricious standard to claims that the agency failed to admit clearly admissible evidence, or failed to produce findings of fact or conclusions of law sufficient to explain its decision. *Leavitt v. State ex rel. Wyoming Workers' Safety & Comp. Div.*, 2013 WY 95, ¶¶ 17-19, 307 P.3d 835, 840 (Wyo. 2013).

[¶16] At the agency level, a worker's compensation claimant must establish that the particular physical malady for which he is seeking benefits is compensable and that it is causally connected to a specified on-the-job incident by a preponderance of the evidence. A claimant cannot recover for a condition which is a result of normal aging and day-to-day life activities. *In re Hirsch*, 2014 WY 61, ¶¶ 36-37, 323 P.3d 1107, 1115 (Wyo. 2014) (citing Wyo. Stat. Ann. § 27-14-102 (a)(xi)). Except in exceedingly obvious cases, proof of causation requires expert testimony to a reasonable degree of medical probability that a workplace event materially contributed to the precipitation, aggravation, or acceleration of the bodily damage for which compensation is sought—i.e., that it more probably than not had that effect. *Stevens v. State ex rel. Wyoming Dep't of Workforce Servs.*, 2014 WY 153, ¶ 50 n.6, 338 P.3d 921, 932 n.6 (Wyo. 2014).

[¶17] Rogers challenges a number of the hearing examiner's findings of fact as being unsupported by substantial evidence and arbitrary and capricious. He does not, however, suggest that admissible evidence contrary to those findings was excluded from the hearing or the record in general. In fact, his arguments rely solely upon record evidence. Consequently, the arbitrary and capricious standard is inapplicable, and we will review

4

the findings of fact only to determine whether they are reasonably based on substantial evidence.

[¶18]   Rogers first takes issue with the hearing examiner's findings that his testimony about his alleged fall was uncorroborated.  He asks us to evaluate those statements by reading them literally, and to contradict that literal reading directs us to snippets from statements made by Emery and Palmer.  The hearing examiner found, in substance, that Rogers' testimony was corroborated, to the extent it was, by nothing more than his restatement of his version of the facts to others, and not by the testimony of either Emery or Palmer.

[¶19]   Rogers points to Emery's testimony about a conversation he had with him on their way home from work on the day of his alleged fall.  Rogers' insistence that he gave a detailed and nearly contemporaneous account of the accident comes primarily from his attorney's questions rather than Emery's answers to them.  Emery actually described a general conversation between two co-workers about how they were both sore at the end of a work day, which was the sort of conversation they had many times after a physically demanding day.  When asked if he knew Rogers had hurt himself that day, Emery could only reply that "he said he did."  In light of Emery's and Palmer's testimony that, despite working close to Rogers on the day the footers were poured, neither of them saw or heard him fall, or saw him on the ground,[10] one would have to strain to find that conversation corroborative of his version of the event, and the hearing examiner did not make that stretch.  We defer to a hearing examiner's decision concerning the weight to be given to evidence unless it is clearly contrary to the overwhelming weight of the evidence.  *In re Vandre*, 2015 WY 52, ¶ 34, 346 P.3d 946, 959 (Wyo. 2015).  We cannot say it was in this case.

[¶20]   Rogers also directs us to a brief note made by a Division employee, Gina Salazar, regarding a telephone conversation with Palmer.  Palmer allegedly told Salazar that he saw Rogers "fall back" but was unsure if he did it on purpose.  The hearing officer gave little weight to this evidence for legitimate reasons.  Palmer did not recall having any such conversation with Salazar, and Salazar was not called as a witness to provide context and foundation to support the second-hand statement.  Once again, we defer to the hearing examiner's decision as to the weight to be given to this evidence.  *Id.*

[¶21]   Rogers also takes issue with the hearing examiner's finding that there was no evidence that he reported going to the emergency room on December 18, 2013, until much later, on January 21, 2014.  We believe that statement was meant to convey that no evidence other than his testimony supported his assertion that he reported the hospital

---

[10] Emery did testify at one point that he saw Rogers leaning against the corner of the trench, but that he was approximately fifteen feet from the position of the concrete chute and separated from it by three groups of conduit that crossed the trench.

visit to Russell's office manager the next day, December 19. The hearing examiner recognized that Rogers testified to that effect, but he also found it significant that Rogers did not call the office manager or any other office personnel he allegedly spoke to that day to corroborate that testimony. We cannot fault the examiner for doing so.

[¶22] The closest Rogers came to a legitimate criticism relates to the examiner's statement that, upon being confronted with a medical report indicating he had previously undergone lumbar spine examinations, Rogers said he did not know what the lumbar spine was. We have scoured the record, and we cannot find anywhere that he made such a statement. Rogers testified that he had a history of back pain which had resolved itself, and the Converse County hospital record likewise indicates a history of back pain. The statement that does not appear in the record is of doubtful importance, although it could perhaps indicate that Rogers was being evasive. We have previously held that only those findings which are necessary to support a hearing examiner's decision must be supported by facts in the record. *Leavitt,* ¶ 32, 307 P.3d at 842. This particular finding was unnecessary to the decision, and it is unimportant when considered in the context of the entire record.

[¶23] Finally, Rogers takes issue with the hearing examiner's determination that he provided no evidence that his alleged fall injured his lumbar spine. In large part, he relies on a seven-line letter sent to him by CNP Howard two days before the OAH hearing. There Howard stated:

> To the best of my judgment and experience there is a reasonable degree of probability in my observation in the findings in his physical exam and MRI are consistent with the type of injury that he describes and potentially consistent with continued aggravating assault of the continue [sic] jack hammering.

The hearing examiner found that statement less than compelling.

[¶24] As noted above, proof of causation usually requires expert medical testimony that a workplace event more probably than not effected the bodily damage for which compensation is sought. In contrast, Howard's statement conveys only the likelihood that Rogers' strained muscles and disc bulge could be consistent with a fall, and the likelihood that they are potentially consistent with using a jackhammer. To our ears that is indistinguishable from an opinion that an accident could possibly have caused a lower back condition. It is the sort of opinion that we have held insufficient to satisfy a claimant's obligation to prove causation. *Guerrero v. State ex rel. Wyoming Dep't of Workforce Servs.*, 2015 WY 88, ¶ 19, 352 P.3d 262, 268 (Wyo. 2015).

[¶25]  The human body is a wondrously complex machine that is constantly subjected to external forces, the effects of heredity, the impact of bad habits, and the ravages of time. *Mize v. North Big Horn Hosp. Dist.*, 931 P.2d 229, 234 (Wyo. 1997).  It is not too much to ask that a claimant provide medical evidence to show that his condition was probably caused by a work-related injury rather than another non-compensable cause.

[¶26]  The radiology report concerning the plain film x-rays taken at Memorial Hospital of Converse County noted narrowed disc spaces at L4-5, partial sacralization at L5, and spondylolisthesis at L4-L5, all of which could have been and likely were degenerative changes associated with aging and use rather than the result of trauma.  The report on the MRI taken in Oklahoma also indicated what could be degenerative facet changes and disc bulges.  CNP Howard's letter provided no indication as to how these changes could be distinguished from those which occur due to normal aging in a 48-year-old man who made his living doing hard physical labor.  A statement that such conditions could be consistent with a fall does not separate the claimed injury from the universe of other potential causes.

[¶27]  Finally, hearing examiners may disregard even uncontradicted opinion testimony from a medical expert if it is not adequately supported by the facts on which it purportedly rests, or if it is based upon an incomplete or inadequate medical history. *Leavitt*, ¶ 21, 307 P.3d at 841.  Nothing in the record suggests that CNP Howard knew of Rogers' history of low back pain, which might or might not have suggested a progressive degenerative cause.  It is obvious that the hearing examiner was not presented with anything resembling the two-year history of treatment that Howard referred to in her letter, which is concerning.  The examiner confronted a case in which the event alleged to have caused the injury was at least arguably not established, an arguably delayed report of the claimed injury, and a medical opinion that only hinted at causation, and that only on the basis of what appears to be an incomplete medical history.  We cannot fault him for declining to find causation under these circumstances.

## CONCLUSION

[¶28]  We conclude that the hearing examiner's determinations of fact were reasonable and based on substantial evidence.  Because Rogers' arguments present no opportunity to resort to other standards of review, we affirm the district court on that basis and do not analyze the timeliness of Rogers' Report of Injury.