# IN THE SUPREME COURT, STATE OF WYOMING

## 2017 WY 60

APRIL TERM, A.D. 2017

May 22, 2017

IN THE MATTER OF THE WORKER'S
COMPENSATION CLAIM OF:

JEFFREY BAKER,

Appellant
(Petitioner),

v.                                                                            S-16-0209

STATE OF WYOMING, ex rel.,
DEPARTMENT OF WORKFORCE
SERVICES, WORKERS' COMPENSATION
DIVISION,

Appellee
(Respondent).

*Appeal from the District Court of Campbell County*
*The Honorable John R. Perry, Judge*

*Representing Appellant:*
> Mark D. Sullivan, Mark D. Sullivan, P.C., Wilson, Wyoming.

*Representing Appellee:*
> Peter K. Michael, Wyoming Attorney General; Michael J. Finn, Senior Assistant Attorney General; Benjamin E. Fischer, Assistant Attorney General.

*Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.*

NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**FOX, Justice.**

[¶1]    Jeffrey Baker injured his right shoulder at work, and his shoulder surgery was covered by the Wyoming Workers' Compensation Division (Division).  Mr. Baker later requested temporary total disability benefits related to a neck injury he claimed occurred with the shoulder injury.  The Division denied his request.  On review, the Medical Commission Hearing Panel (Commission) denied his claim on the grounds that he failed to prove a causal relationship between his neck injury and the work-related accident.  The district court upheld the Commission's decision and Mr. Baker appealed.  We affirm.

## ISSUES

[¶2]    We rephrase the issues as:

1.    Was the Commission's decision that Mr. Baker did not meet his burden of establishing the causal relationship between his neck injury and his work-related accident supported by substantial evidence?

2.    Was the Commission's decision arbitrary and capricious?

## FACTS

[¶3]    Mr. Baker worked as a laborer for Van Ewing Construction, Inc. when he was injured while carrying a several-hundred-pound log.  He went to the Campbell County Memorial Hospital (CCMH) walk-in clinic complaining of right-shoulder pain, numbness, and tingling in his arm.  Shoulder x-rays taken at CCMH on the date of injury were negative for a fracture or other abnormality, and Mr. Baker was prescribed pain medication and a sling for his right arm.  Due to continued pain in his right shoulder, Mr. Baker saw Joseph Allegretto, M.D., an orthopedist.  Mr. Baker complained of "moderate to severe" "right shoulder pain in the area of the a.c. joint."  Dr. Allegretto performed a physical examination, including an examination of Mr. Baker's head and neck, and reported that the head and neck area was normal and not producing injury or damage.  Dr. Allegretto ordered an MRI of the right shoulder, and prescribed physical therapy.

[¶4]    Mr. Baker began physical therapy on December 12, 2013, and at his January 6, 2014 appointment with Dr. Allegretto, reported minimal relief of his right-shoulder pain, so Dr. Allegretto performed a corticosteroid injection into the subacromial space of Mr. Baker's shoulder, which also provided little relief.  Mr. Baker then underwent an electrodiagnostic (EMG) study to determine whether his continued pain originated from carpal tunnel syndrome or a pinched nerve in the neck.  The EMG study showed evidence of carpal tunnel syndrome, but neither a pinched nerve in the neck, nor right cervical radiculopathy or plexopathy.  As a result, Mark Murphy, M.D., an orthopedic surgeon, performed a right shoulder arthroscopic Mumford distal clavicle excision, right carpal tunnel release, and right shoulder arthroscopic subacromial decompression, which was covered by the Division.

1

[¶5]   Mr. Baker continued to report numbness and tingling in his right arm as well as pain radiating into his right shoulder.  A second EMG study found no evidence of right cervical radiculopathy, plexopathy, or entrapment neuropathy, and indicated Mr. Baker's carpal tunnel condition had been repaired.  Dr. Murphy then ordered a cervical MRI which showed mild posterior disc bulging at C4-C5, minimal posterior disc bulging at C5-C6, and marked degenerative disc disease with extensive posterior disc bulging at C6-C7.  Dr. Murphy referred Mr. Baker to Mahesh Karandikar, M.D., a neurosurgeon, who initially recommended a C4-C7 anterior cervical discectomy and fusion (ACDF).  The Division denied Dr. Karandikar's preauthorization request for the C4-C7 ACDF on the basis that the procedure was not related to a work injury.  Dr. Karandikar submitted a second preauthorization request to the Division, limiting the surgery to a C6-C7 ACDF.  The Division again denied the request because it was not work related.  Dr. Karandikar ultimately performed a C5-C7 ACDF on April 30, 2015.[1]

[¶6]   Prior to the April 30, 2015 ACDF surgery, Mr. Baker requested temporary total disability (TTD) benefits.  Dr. Karandikar certified Mr. Baker as temporarily totally disabled between September 23 and November 23, 2014, and designated the disability as related to the cervical spine.  The Division denied the benefits, and Mr. Baker objected to the determination and requested a hearing.  After an evidentiary hearing, the Commission determined that Mr. Baker had "failed to show by a preponderance of the evidence that his cervical condition was causally related to the work injury on November 4, 2013." The district court affirmed the Commission's ruling, and Mr. Baker timely appealed to this Court.

### STANDARD OF REVIEW

[¶7]   This Court reviews a district court's decision on an administrative decision as though the case came directly from the administrative agency.  *Price v. State ex rel. Dep't of Workforce Servs., Workers' Comp. Div.*, 2017 WY 16, ¶ 7, 388 P.3d 786, 789 (Wyo. 2017).   Our review is governed by the Wyoming Administrative Procedure Act (W.A.P.A.), which provides:

> (c)  To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:

---

[1] The Commission noted that Mr. Baker "has not submitted any medical bills for the [ACDF] surgery to the Division and no final determinations have been made on the compensability of those expenses."

. . . .

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

(B) Contrary to constitutional right, power, privilege or immunity;

(C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;

(D) Without observance of procedure required by law; or

(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

Wyo. Stat. Ann. § 16-3-114(c) (LexisNexis 2015). We review an agency's findings of fact by applying the substantial evidence standard. Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Guerrero v. State ex rel., Dep't of Workforce Servs., Workers' Comp. Div.*, 2015 WY 88, ¶ 12, 352 P.3d 262, 266 (Wyo. 2015) (quoting *Bush v. State ex rel. Wyo. Workers' Comp. Div.*, 2005 WY 120, ¶ 5, 120 P.3d 176, 179 (Wyo. 2005)). "Findings of fact are supported by substantial evidence if, from the evidence preserved in the record, we can discern a rational premise for those findings." *Id.* (quoting *Kenyon v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2011 WY 14, ¶ 11, 247 P.3d 845, 849 (Wyo. 2011)).

## DISCUSSION

### I. Was the Commission's decision that Mr. Baker did not meet his burden of establishing the causal relationship between his neck injury and his work-related accident supported by substantial evidence?

[¶8] Mr. Baker asserts that the Commission's conclusion that he failed to establish a causal connection between his workplace injury and his cervical spine injury was not supported by substantial evidence. He contends that he demonstrated by a preponderance of the evidence that he "simultaneously suffered two injuries on November 4, 2013." Mr. Baker claims that the Commission "ignore[d] entirely" the "ultimate conclusions" of his experts' opinions establishing the causal connection between his neck injury and work-related injury. Mr. Baker designated three experts: Dr. Karandikar, the treating neurosurgeon; Dr. Murphy, the treating orthopaedic surgeon; and Jordan Malkowski, the treating physical therapist. He presented each expert's testimony to the Commission by deposition. The Division designated three experts: Dr. Scott Johnston, M.D.; Dr. Ricardo

3

Nieves, M.D.; and Dr. Paul Ruttle, M.D. The Division presented Dr. Johnston's opinion to the Commission through his written reports, and the opinions of Dr. Nieves and Dr. Ruttle by deposition.

[¶9] The Commission found significant flaws in each of the six experts' opinions. The Commission, as the trier of fact, has the responsibility to "determine relevancy, assign probative value, and ascribe the relevant weight given to the evidence presented." *Chavez v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2009 WY 46, ¶ 18, 204 P.3d 967, 971 (Wyo. 2009) (quoting *Spletzer v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2005 WY 90, ¶ 21, 116 P.3d 1103, 1112 (Wyo. 2005)). We will not "re-weigh the evidence or re-determine facts or assess the credibility of witnesses so long as the decision of the hearing examiner is based on relevant evidence which a reasonable mind might accept in support of the agency's conclusions." *Spletzer*, 2005 WY 90, ¶ 22, 116 P.3d at 1112 (citations and internal quotation marks omitted). It was Mr. Baker's burden to prove, by a preponderance of the evidence, that his cervical spine injury was causally related to his workplace injury. *In re Claim of Hood*, 2016 WY 104, ¶ 16, 382 P.3d 772, 776 (Wyo. 2016). Although all of the experts fell short, the fact that his experts failed to meet that burden was fatal to Mr. Baker's claim, and, applying our standard of review, we will find that reasonable minds could find the evidence adequate to support the Commission's conclusion.

[¶10] Mr. Baker is required to prove a causal connection between his workplace injury and his neck injury to a reasonable degree of medical probability. *See Eaton v. State ex rel. Dep't of Workforce Servs.*, 2015 WY 107, ¶ 7, 356 P.3d 765, 766 (Wyo. 2015). "This commonly requires expert medical testimony that it is more probable than not that the work contributed in a material fashion to the precipitation, aggravation or acceleration of the injury." *Id.* The words used by an expert to express his opinion about the cause of a claimant's injury are critical. *See Middlemass v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2011 WY 118, ¶ 28, 259 P.3d 1161, 1168 (Wyo. 2011). We have consistently held that expert medical testimony stating the claimant's work "contributed to" the injury or the injury was "most likely" or "probably" the product of the workplace is sufficient, but opinions expressed in terms of "can," "could," or "possibly" are insufficient to meet a claimant's burden of proof. *Id.*; *Price*, 2017 WY 16, ¶ 18, 388 P.3d at 792; *Guerrero*, 2015 WY 88, ¶ 19, 352 P.3d at 268. Additionally, the Commission may disregard an expert's opinion if it finds the opinion to be unreasonable, based on incomplete and inaccurate medical history, or not adequately supported by the facts upon which the opinion is based. *See Johnson v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2014 WY 33, ¶ 25, 321 P.3d 318, 325 (Wyo. 2014).

[¶11] Mr. Baker argues that both Dr. Murphy and Dr. Karandikar opined that his neck injury was causally related to the work injury on November 4, 2013, yet the Division ignored these conclusions. Dr. Murphy testified:

4

Q. [Mr. Sullivan:] Okay. And then similarly, Doctor, could that same mechanism of injury as I've described it to you also simultaneously have injured Mr. Baker's neck?

A. [Dr. Murphy:] It could have yes.

Q. And do you believe that the same mechanism of injury, to a reasonable degree of medical certainty, could have caused the disk bulge that's shown on this MRI report at C6-C7.

A. It could have, yes.

. . . .

Q. I'm sorry. Just so we get a clear record on this, what is it that your opinion is, Doctor?

A. I believe that he likely had some degree of degenerative change at C6-7 which was aggravated and became symptomatic as a result of his work injury.

[¶12] The Commission highlighted Dr. Murphy's use of "could have" in his testimony related to causation and other portions of his testimony in which Dr. Murphy testified that the degenerative disk disease such as that found in Mr. Baker's cervical spine can become symptomatic absent any precipitating trauma or event. It also noted that Dr. Murphy testified that, had the work injury caused the changes in Mr. Baker's cervical spine seen in the August 2014 MRI, he would have expected Mr. Baker to report symptoms such as neck pain, stiffness, or limited range of motion by the time Mr. Baker was seen by Dr. Allegretto on November 18, 2013, none of which was reported by Mr. Baker. Although the Commission might have chosen to focus on Dr. Murphy's testimony that it was "likely" Mr. Baker had some degree of degenerative change which was aggravated as a result of his work injury, as the factfinder in a contested case hearing, it is for the Commission to weigh the available evidence. *Johnson*, 2014 WY 33, ¶ 25, 321 P.3d at 325. There was sufficient evidence for the Commission to conclude that Dr. Murphy's testimony did not support a finding of causation.

[¶13] Although Dr. Karandikar's testimony was less equivocal, the Commission nevertheless found it was not adequately supported. He testified:

Q. [Mr. Sullivan:] Is it your opinion that his degenerative disc disease at C6-C7 is work related?

A. [Dr. Karandikar:] The herniation, yeah. So the herniation – it was accelerated by it.

Q. Okay.

A. That's a tough question to be really accurate on. So was there some degenerative disk disease? Most likely, yes. I can't prove that. Was it clearly exacerbated by -- exacerbated by some sort of inciting event? Yes. That's -- you know, so . . .

Q. Okay.

A. It's still a degenerative disk. See what I'm saying? The problem is the degenerative disk. And, yes, that was a result of the accident, but that doesn't mean he didn't have a milder degenerative disk before that. So it's not, I would say, the best way to ask that question, but I think I see what they're getting at.

. . . .

Q. Dr. Karandikar, do you believe, to a reasonable degree of medical certainty, that Jeffrey Baker's November 4th, 2013 injury caused the cervical spine condition for which you are now recommending surgical intervention?

A. Yes, I do.

Mr. Baker's attorney questioned Dr. Karandikar about select physical therapy notes, and Dr. Karandikar testified that Mr. Baker's reports of numbness, headaches, and neck pain could be consistent with a cervical spine injury. The Commission, however, found it difficult to rely on Dr. Karandikar's testimony because it was based on an incorrect and incomplete medical history. "[H]earing examiners may disregard even uncontradicted opinion testimony from a medical expert if it is not adequately supported by the facts on which it purportedly rests, or if it is based upon an incomplete or inadequate medical history." *Rogers v. Russell Constr. Co., Inc.*, 2016 WY 80, ¶ 27, 376 P.3d 1172, 1177 (Wyo. 2016).

[¶14] At his initial appointment with Dr. Karandikar, ten months after the workplace injury, Mr. Baker reported "excruciating neck pain" from the date of the workplace injury on. This assertion was not borne out by the medical records. Ms. Malkowski, Mr. Baker's treating physical therapist, testified that she did not examine Mr. Baker's neck at

his initial visit, as he reported significant right shoulder pain with some numbness in his arm, but no neck pain. She testified that Mr. Baker reported neck pain in some subsequent visits and pointed to her use of mechanical traction in her treatment plan as an indication of her concern for cervical spine involvement, but neither her testimony nor her records support a finding of "excrutiating neck pain" from the time of the original injury. She was uncertain whether the neck pain was caused by the right shoulder pain, and she provided no opinion as to its cause. Dr. Karandikar testified that prior to Mr. Baker's initial appointment he had reviewed only the referral letter from Dr. Murphy and the record of an injection in the joint of Mr. Baker's shoulder completed by another doctor in Dr. Karandikar's office. When the Commission "disregards certain evidence and explains its reasons for doing so based upon determinations of credibility or other factors," its decision will be upheld under the substantial evidence test. *Dale v. S & S Builders, LLC*, 2008 WY 84, ¶ 22, 188 P.3d 554, 561 (Wyo. 2008). Our review of any particular decision turns not on whether we agree with the conclusion, but on whether the agency could reasonably conclude as it did, based on all of the evidence before it. *Id.* The Commission's decision to reject Dr. Karandikar's medical conclusion was reasonable, considering the conclusion was made with incorrect and incomplete information.

[¶15] Finally, Mr. Baker takes issue with the Commission's treatment of the Division's experts' opinions. The Commission concluded that "The opinions of the Division's experts are also not without problems." The Commission determined that Dr. Johnston's reports were inconsequential because he was not asked to evaluate Mr. Baker's neck injury. It found that Dr. Nieves testified somewhat incorrectly, and questioned the thoroughness of his exam of Mr. Baker as well as the accuracy of his report. And it resolved that Dr. Ruttle based his opinion, in part, on inaccurate information. The Commission clearly recognized the weaknesses in each of the Division's expert witnesses. The relative weight, however, that the Commission placed on the Division's experts is immaterial. Mr. Baker, as the claimant, had the burden to prove all elements of his claim by a preponderance of the evidence. *See Jacobs v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2013 WY 62, ¶ 11, 301 P.3d 137, 141 (Wyo. 2013). The Commission found that Dr. Karandikar's testimony was not credible, that Dr. Murphy's opinion alone did not establish causation, that the physical therapist provided no testimony as to causation, and, therefore, that Mr. Baker failed to meet his burden to establish that his neck injury was causally related to a workplace injury. The Division's experts' testimony was certainly flawed, but it was not the Division's burden to **disprove** causation. We find that the Commission could have reasonably concluded that Mr. Baker did not prove causation.

## II. *Was the Commission's decision arbitrary and capricious?*

[¶16] Mr. Baker also challenges the Commission's findings as arbitrary and capricious. The arbitrary and capricious standard is available "as a 'safety net' to catch agency action

which prejudices a party's substantial rights or which may be contrary to the other W.A.P.A. review standards yet is not easily categorized or fit to any one particular standard." *In re Claim of Hood*, 2016 WY 104, ¶ 15, 382 P.3d at 776 (quoting *Dale*, 2008 WY 84, ¶ 23, 188 P.3d at 561). "The arbitrary and capricious standard applies if the agency failed to admit testimony or other evidence that was clearly admissible, or failed to provide appropriate findings of fact or conclusions of law." *Jacobs*, 2013 WY 62, ¶ 9, 301 P.3d at 141. Mr. Baker, however, does not argue that the Commission failed to admit testimony or other evidence that was clearly admissible. Mr. Baker's arguments rely exclusively upon record evidence. As a result, the arbitrary and capricious standard is inapplicable. *Id.*; *see also Rogers*, 2016 WY 80, ¶ 17, 376 P.3d at 1175.

## *CONCLUSION*

[¶17] We find that the Commission's determination that Mr. Baker did not prove his neck injury was causally related to his work injury on November 4, 2013 was supported by substantial evidence. The Commission could have reasonably concluded as it did and its decision was not arbitrary and capricious. Affirmed.